Leo James Terrell, Esq. (SBN 149693)
Tony Su, Esq. (SBN 262323)
Law Office of Leo James Terrell
11870 Santa Monica Blvd., Ste. 106-673
Los Angeles, CA 90025
P:  (310) 478-3666 / F:  (310) 478-3650
Email:  Civil1975@aol.com

Attorneys for Plaintiff LaMont Tarkington

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LAMONT TARKINGTON; | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES:** |
| vs. | **(1)  DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, FABRICATION OF EVIDENCE** |
| COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; LOS ANGELES COUNTY SHERIFF JIM MCDONNELL; LAUREN BROWN; JAMES MURREN; DONALD YOUNG; LAWRENCE BEACH ALLEN CHOI PC; and DOES 1-10 INCLUSIVE; | **(2) JOINT ACTION/CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS, 42 U.S.C. §1983, FABRICATION OF EVIDENCE** |
| Defendants. | **(3) VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983, SUPERVISORIAL LIABILITY** |
| | **(4) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, MALICIOUS PROSECUTION** |
| | **(5) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, *BRADY* VIOLATIONS** |
| | **(6) JOINT ACTION/CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS, 42 U.S.C. §1983, *BRADY* VIOLATIONS** |
| | **(7) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, *MONELL* VIOLATIONS** |
| | **(8) VIOLATION OF CAL CIVIL CODE §§ 51 *et. seq*. AND 52.1** |
| | **(9)  VIOLATION OF STATE DUE PROCESS, CAL CONST. ART. I § 7(a)** |
| | **(10) FALSE IMPRISONMENT** |
| | **(11) NEGLIGENT HIRING, SUPERVISION, DISCIPLINING AND RETAINING DEPUTY SHERIFFS** |
| | **DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

# I.

## JURISDICTION AND VENUE

1.      This action is brought by Plaintiff LaMont Tarkington (hereinafter "Plaintiff") pursuant to 42 U.S.C. § 1983, California Constitution Art. I §7(a), and California Civil Code §§ 51 *et. seq.*, and 52.1.

2.      This Court has jurisdiction under 28 U.S.C. § 1343(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. § 1983 and under 28 U.S.C. § 1331.

3.      The acts and omissions complained of commenced on December 14, 2005 and continued until June 4, 2018 within the Central District of California. Therefore, venue lies in the Central District of California pursuant to 28 U.S.C. § 1391.

# II.

## PARTIES

4.      At all times relevant herein, Plaintiff is a resident of the State of California and resided within the jurisdiction of the State of California.

5.      At all times relevant herein, Defendant Los Angeles County Deputy Sheriff Detective Lauren Brown (hereinafter "Brown") was employed by and working on behalf of the Los Angeles County Sheriff's Department, and resided within the jurisdiction of the State of California. In his capacity as a detective for the Los Angeles County Sheriff's Department, he actively participated in the investigation resulting in the prosecution and wrongful conviction of Plaintiff.  Defendant Brown is sued in his individual capacity.

6.      At all times relevant herein, Defendant Los Angeles County Deputy Sheriff Detective James Murren (hereinafter "Murren") was employed by and working on behalf of the Los Angeles County Sheriff's Department, and resided within the jurisdiction of the State of California. In his capacity as a detective for the Los Angeles County Sheriff's Department, he actively participated in the investigation resulting in the prosecution and wrongful conviction of Plaintiff.  Defendant James Murren is sued in his individual capacity.

7.      At all times relevant herein, Defendant Los Angeles County Deputy Sheriff Sergeant Donald Young (hereinafter "Young") was employed by and working on behalf of the Los Angeles County Sheriff's Department, and resided within the jurisdiction of the State of California. In his capacity as a

sergeant for the Los Angeles County Sheriff's Department, he actively participated in the investigation resulting in the prosecution and wrongful conviction of Plaintiff. Defendant Donald Young is sued in his individual capacity.

8.     At all times relevant herein, Defendant Los Angeles County Sheriff, presently Jim McDonnell (hereinafter "McDonnell"), was employed by and working on behalf of the Los Angeles County Sheriff's Department, and resided within the jurisdiction of the State of California. In his capacity as Sheriff for the Los Angeles County Sheriff's Department, he participated and ratified the policies, customs and/or practices resulting in the investigation, prosecution and wrongful conviction of Plaintiff and other similarly situated criminal defendants. Defendant McDonnell is sued in his individual and official capacity.

9.     At all times relevant herein, Defendant County of Los Angeles was a public entity, organized and existing under the laws of the State of California. The Los Angeles Sheriff's Department is, and at all times alleged herein, was an agency of Defendant County of Los Angeles.

10.     At all times relevant herein, Defendant Lawrence Beach Allen and Choi PC is a California corporation, and resided within the jurisdiction of the State of California.

11.     Plaintiff is informed and believes and thereon alleges that Defendants sued herein as Does 1 through 10, inclusive, were employees of the Los Angeles County Sheriff's Department, and were at all times relevant times acting in the course and scope of their employment and agency. Each Defendant is the agent of the other. Plaintiff alleges that each of the Defendants named as a "Doe" was in some manner responsible for the acts and omissions alleged herein, and Plaintiff will seek leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained.

### III.

### GENERAL ALLEGATIONS

12.     Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, each of the Defendant was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-defendants.

**COMPLAINT FOR DAMAGES**

13.     Each paragraph of this Complaint is expressly incorporated into each cause of action which is a part of this Complaint.

14.     The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiff.

**IV.**

**FACTUAL ALLEGATIONS**

**A.     BACKGROUND**

15.     This claim arises from the investigation, prosecution, conviction, and incarceration of Plaintiff for crimes that he did not commit.  Plaintiff was only 33-years-old when arrested.  Plaintiff served at least twelve-years in a jail and maximum security prison, and was therefore subject to severe limitations and indignities inherent in such settings.  Plaintiff experienced the fear and anxiety of being imprisoned with the State's most serious and violent offenders.  Most fundamentally, Plaintiff lost his youth and the years during which he could have gone to school, pursued a career, and raised a family.

16.     From his arrest and throughout his twelve-years in custody, Plaintiff proclaimed his innocence and relentlessly worked to procure his release by showing that a miscarriage of justice occurred. In pursuit of relief, he filed an appeal and two writs of habeas corpus.  Plaintiff refused to accept any plea bargain, always maintaining his innocence.

17.     Plaintiff's resilience and knowledge that he was innocent allowed him to survive while in jail and prison, but tragically, some of the best years of his life were taken from him based on the unconstitutional acts of officers of the Los Angeles County Sheriff's Department.  He was deprived of the rights and privileges our society holds most dear such as freedom and the ability to raise a family and pursue a career.

**B.     ARREST AND WRONGFUL CONVICTION DUE TO FABRICATION OF EVIDENCE**

18.     On December 14, 2005 at about 10:15 a.m., three masked men robbed tellers at a Bank of America inside an Albertsons supermarket and took about $12,000 in Palmdale, CA.  Some of the money was "bait money", which are bills with recorded serial numbers, and the currency included at least one dye pack designed to explode and spray dye.  (**Exhibit A**, Preliminary Hearing Transcript at 32 ln. 27-28; 33 ln. 1-28.)

**COMPLAINT FOR DAMAGES**

19.     At trial, bank teller Brandi Bateman testified that she saw three or four mask men come out of the Albertsons' supermarket, get into a white SUV, and drive off.  (**Exhibit B**, Reporters' Transcript on Appeal (hereinafter "RT") at 508 ln. 2-8.)   The witness gave the sheriff the license plate number. (**Exhibit B**, RT at 504 ln. 10-27.)

20.     Bank teller Yesenia Bahena worked at the Bank of America located at 37th Street East and Avenue S on December 14, 2005 when it was robbed by three men.  (**Exhibit B**, RT at 525 ln. 15-20, 27-28; 526 ln. 1-13; 528 ln. 6-7.)  At trial, Yesenia Bahena testified that she told the deputies that she would not be able to identify any suspects.  (**Exhibit B**, RT at 532 ln. 18-20.)

21.     Bank teller Yolanda Moore worked for Bank of America in Palmdale on December 14, 2005 when it was robbed.  (**Exhibit B**, RT at 541 ln. 1-25; 542 ln. 1-15.)  At trial, Yolanda Moore testified that three individuals were part of the robbery, two jumped over the counter, and one stood on the other side.  (**Exhibit B**, RT at 545 ln. 7-9.)  Yolanda Moore would not be able to identify these individuals because they were masked and completely covered.  (**Exhibit B**, RT at 545 ln. 19-26.)

22.     Bank teller Claudia Rissling worked at the Bank of America located at 4644 East Avenue S, Palmdale, CA on December 14, 2005 when three males came in and yelled "get the fuck down." (**Exhibit A**, Preliminary Hearing Transcript at 25 ln. 4-27.)  Claudia Rissling testified that all three had a mask around their nose and bottom of their face.  (**Exhibit A**, Preliminary Hearing Transcript at 29 ln. 24-28; 30 ln. 1-8.)

23.     Assistant Manager Amori Carias worked at the [Bank of America] that was robbed on December 14, 2005.  (**Exhibit B**, RT at 564 ln. 12-20.)  At trial, Amori Carias testified that she saw two boys jumping over the counter getting money out of the tellers and one standing next to the gate in the lobby saying, "hurry up.  Hurry up.  We need to go.  We need to go."  (**Exhibit B,** RT at 566 ln. 6-24.) Amori Carias testified that the two individuals who jumped over the counter was like her height, that she was 5'6" tall, and that she could not recall the height of the individual in the lobby.  (**Exhibit B**, RT at 569 ln. 25-28; 570 ln. 1-27.)  Amori Carias testified that [the robbers] were wearing dark clothes and loose jackets, and that she could not tell their build.  (**Exhibit B**, RT at 577 ln. 23-28; 578 ln. 1.)

24.     At trial, Los Angeles County Deputy Sheriff Steven Crosby testified that at 6:44 p.m. the same day, he received a dispatch call regarding a white Ford Explorer less than one mile from the

**COMPLAINT FOR DAMAGES**

Albertsons.  (**Exhibit B**, RT at 655 ln. 3-16; 659 ln. 1-6.)  Deputy Steven Crosby found $124 in the vehicle. (**Exhibit B**, RT at 657 ln. 18-25.)

25.     At about 9:00 p.m. the same day, a Dodge Magnum was stopped by Los Angeles County Sheriff Deputies Giovanni, Moreno, and Garcia for a traffic violation east of Normandie and Century Blvd., which was about an hour or 60 to 70 miles from the location of the bank.  (**Exhibit B**, RT at 707 ln. 17-27; 714 ln. 25-28; 715 ln. 1-16.)  Plaintiff was in the front passenger seat and Darris Allen was in the driver's seat.  (**Exhibit B**, RT at 708 ln. 20-28; 709 ln. 1-20.)

26.     During a search of the vehicle, the deputies found a black plastic bag wedged between the driver's seat and center counsel with about $3,000.00 in currency and a jacket on the rear back seat containing currency.  (**Exhibit B**, RT at 709 ln. 25-28; 710 ln. 1-8; 711 ln. 3-6; 721 ln. 22-28; 722 ln. 10-23; 794 ln. 11-21.)

27.     At trial, Deputy Diane Moreno Garcia testified that when she searched Plaintiff's person at the station, she found $201 in currency in his pants pocket.  (**Exhibit B**, RT at 796 ln. 1-28.)

28.     The money that Deputy Diane Moreno Garcia came into contact with that night did not have the smell of pepper spray.  (**Exhibit B**, RT at 806 ln. 19-25.)

29.     At trial, Darris Allen testified that the money in the black bag, the jacket, that the money in the jacket, and that the money that was found on Plaintiff at the station were all his.  (**Exhibit B**, RT at 1188 ln. 16-28.)

30.     On March 13, 2007 at trial, Defendant Los Angeles County Sheriff's Department Deputy Sheriff Detective Lauren Brown testified that he was assigned to the Palmdale Station Detective Bureau. (**Exhibit B**, RT at 742 ln. 6-10.)  Defendant Detective Brown testified that he was assigned to investigate the [robbery] and searched the Dodge Magnum.  (**Exhibit B**, RT at 742 ln. 14-16.)  Defendant Detective Brown testified that all the clothing was found in the rear hatch area of the Dodge.  (**Exhibit B**, RT at 752 ln. 7-8.) Defendant Detective Brown testified that he booked into evidence a short nylon stocking, which was tied at the top and contained $59 in coins.  (**Exhibit B**, RT at 753 ln. 17-24.)  Defendant Detective Brown testified that the change had red dye and inside the red dye they used some type of pepper spray because you would smell both; that the dye manufacturer generally places a contaminant in the dye so that when it explodes it would incapacitate the individual carrying it; and that there was the smell of that and

**COMPLAINT FOR DAMAGES**

red dye on the change.  (**Exhibit B**, RT at 754 ln. 10-27.)  When the prosecution asked Defendant Detective Brown whether there were any other items in the car with a color similar to the color of the coins, Defense counsel objected when Defendant Detective Brown began to answer that there was a t-shirt that looked as though it had the same red color.  (**Exhibit B**, RT at 756 ln. 1-5.)  The objection was overruled by the Court.  (**Exhibit B**, RT at 756 ln. 8-10.)  During the trial, Defendant Detective Brown opened up a bag containing the tank top and towel, and Defendant Detective Brown testified, "I can smell that." (**Exhibit B**, RT at 756 ln. 15-28; 757 ln. 1-17.)  When asked what was in the bag, Defendant Detective Brown testified, "a white ribbed tank top. It has what appear to be red dye stain, the same coloring as the change. And when I opened it, I could still smell the pepper spray that they used to put in it." (**Exhibit B**, RT at 757 ln. 19-28; 758 ln. 1-2.)  Defendant Detective Brown testified that the shirt was found in the rear hatch area of the car, as was a towel, which had a few spots that has the same red dye coloring.  (**Exhibit B**, RT at 758 ln. 3-18.)  When the prosecution asked if Defendant Defective Brown wanted the [towel and tank top] taken away, he testified, "I know it's kind of a pain, but I can already feel it in my eyes." (**Exhibit B**, RT at 759 ln. 25-27.)  The prosecution then asked the Judge for permission to take two minutes while Detective Brown goes and washes his hands.  (**Exhibit B**, RT at 759 ln. 28; 760 ln. 1-11.)  Defendant Detective Brown explained that he needed to take a break because he could feel his eyes start to burn already and could feel in his nose; and that he did not feel that before handling the towel and tank top. (**Exhibit B**, RT at 760 ln. 13-25.)  Defendant Detective Brown testified that when he searched the Dodge Magnum, he did not smell pepper spray much in the front but when he started to move some of the clothing in and stuff in the back, he could smell the pepper spray.  (**Exhibit B**, RT at 771 ln. 20-25.)

31.     During the trial on March 20, 2007, Defendant Los Angeles County Deputy Sheriff Sergeant Donald Young testified that he was the supervisor of Defendants Detective James Murren and Detective Brown, that he assigned the [Tarkington] case to Defendant Detective Brown, that he facilitated the search of the Dodge Magnum, and that he supervised the search of the Dodge Magnum.  (**Exhibit B**, RT at 1427 ln. 9-28; 1428 ln. 1-11.)  Defendant Sergeant Young testified that he went with Defendants Detective Murren and Detective Brown to the tow yard to search [Plaintiff's] Dodge Magnum.  (**Exhibit B**, RT at 1423 ln. 13-28; 1424 ln. 1-3; 1427 ln. 4-8.)  Defendant Sergeant Young testified that he would read and review the reports his detectives write.  (**Exhibit B**, RT at 1433 ln. 11-14.)  On March 20, 2007,

**COMPLAINT FOR DAMAGES**

Defendant Sergeant Young testified that he spoke to the District Attorney and Defendant Detective Brown prior to testifying.  (**Exhibit B**, RT at 1434 ln. 28; 1435 ln. 1-2; 1444 ln. 12-17.)  On March 20, 2007, Defendant Sergeant Young testified at trial that there was red stain on the towel and t-shirt found in hatchback area.  (**Exhibit B**, RT at 1432 ln. 7-28; 1433 ln. 1-6.)

32.     On March 20, 2007, Defendant Detective Murren testified at trial that there was red stain on the towel and t-shirt.  (**Exhibit B**, RT at 1452 ln. 2-20.)

33.     Defendants Detective Brown, Sergeant Young, and Detective Murren testified falsely at trial that there was bank dye and pepper spray on the towel and t-shirt.  The false testimony allowed the People to argue that when the bank dye pack exploded and sprayed dye, it engulfed and covered the person wearing the t-shirt.  Since the t-shirt and towel were found in the back of Plaintiff's Dodge Magnum, it allowed the People to argue to the jury that Plaintiff was present when the bank dye pack exploded.

34.     The Los Angeles County Sheriff's Department Scientific Services Bureau tested the DNA on the black pantyhose believed to be used as a mask to cover the face.  The partial DNA profile obtained from the pantyhose is a mixture consistent with two sources of DNA; and both Darris Allen and LaMont Tarkington were excluded as possible contributors to the mixture. (**Exhibit C**, October 6, 2006 DNA Laboratory Report.)

35.     Latent finger prints were lifted off the 2005 Ford Explorer believed to be used as the getaway vehicle.  The Los Angeles County Sheriff's Department Scientific Services Bureau Latent Prints Section – Comparison Unit confirmed that Plaintiff's finger prints did not match the latent prints lifted off the 2005 Ford Explorer.  (**Exhibit D**, January 19, 2006 Latent Print Examination Report.)

36.     Phillip Wiley testified that on December 14, 2005, he saw Plaintiff at the recreational center at 10:30, 10:45 in the morning off of Manchester and St. Andrew's located at 8701 South St. Andrews, County of Los Angeles.  (**Exhibit B**, RT at 1075 ln. 22-28; 1076 ln. 1-18; 1077 ln. 10-11.)  Philip Wiley has worked at the recreation center for 11-years, which is a City of Los Angeles program.  (**Exhibit B**, RT at 1078 ln. 27-28; 1079 ln. 1-18.)

37.     On March 27, 2007, a jury convicted Plaintiff of five counts of second-degree robbery, Penal Code sec. 211, one count of second-degree commercial burglary, Penal Code sec. 459, that Plaintiff robbed the bank for the benefit of a criminal street gang, Penal Code sec. 186.22(b)(1), and that a principal

**COMPLAINT FOR DAMAGES**

1  used a firearm in the commission of that crime, Penal Code sec. 12022.53(b)(e)(1).  (**Exhibit B**, RT at

2  1789 – 1800.)  The Judge sentenced Plaintiff to 39-years and 4-months in state prison.  (**Exhibit B**, RT at

3  1874 – 1876.)

4      38.    Subsequent to the conviction, Plaintiff submitted a Freedom of Information Act and

5  discovered that the FBI had participated in the investigation and/or prosecution of the robbery occurring

6  on December 14, 2005.  The FBI case file/reports contain statements that were made by bank tellers

7  Claudia Rissling, Archna Roma Rekhi, Yesenia Bahena, Amori Carias, and Yolanda Moore describing

8  the physical attributes of the robbery suspects.

9      39.    The Defendants were in possession of the FBI case file/reports and did not produce it to

10 Plaintiff prior to his conviction in 2007.

11 **C.    POST-CONVICTION APPEAL, STRIKE OF GANG ENHANCEMENT, STRIKE OF**

12 **GUN ENHANCEMENT, AND ABUSE OF DISCRETION FOR ADMITTING PRIOR**

13 **ROBBERY CONVICTIONS**

14     40.    On June 15, 2007, Plaintiff appealed his convictions and the Court of Appeals affirmed the

15 convictions but struck Plaintiff's 10-year enhancement for gun use and gang enhancement because there

16 was insufficient evidence to support the findings that Plaintiff robbed the bank for the benefit of a gang.

17 (**Exhibit E**, *People v. LaMont T. Tarkington*, Court of Appeal Second Appellate District Division One,

18 B199860, 12/9/2008, Not to be Published in the Official Reports, at 15.)

19     41.    The Court of Appeals held, "[t]he trial court abused its discretion in admitting evidence of

20 Tarkington's 1997 bank robbery. The two robberies did not contain any one feature so unusual and

21 distinctive as to be 'like a signature.' (People v. Carter (2005) 36 Cal. 4th 1114, 1148.) Nor can we say

22 that the features of the two robberies considered together 'virtually eliminated the possibility that anyone

23 other than the defendant committed the charged offense.' (*People v. Balcom* (1994) 7 Cal.4th 414, 425.)"

24 (**Exhibit E**, *People v. LaMont T. Tarkington*, Court of Appeal Second Appellate District Division One,

25 B199860, 12/9/2008, Not to be Published in the Official Reports, at 7.)

26 ///

27 ///

28 ///

**COMPLAINT FOR DAMAGES**

**D.  COURT OF APPEALS REVERSED PLAINTIFF'S CONVICTIONS, FOUND THAT DEFENDANT BROWN "GREATLY EXAGGERATED" TESTIMONY OF BANK DYE ON THE TOWEL AND T-SHIRT, AND DIRECTED THE PEOPLE TO RELEASE PLAINTIFF OR RETRY HIM**

42.    On October 14, 2011, Plaintiff filed a petition for writ of habeas corpus contending, inter alia, that he was deprived of inadequate assistance of counsel because trial counsel failed to obtain certain cell phone information to support testimony of a defense witness that he was in a different location when the robberies were committed and failed to test certain items found in Plaintiff's vehicle that did not contain red dye form the banks' dye pack, which was cited by the prosecution.  (**Exhibit F**, *In re Lamont T. Tarkington on habeas corpus*, Court of Appeal Second Appellate District Division One, 11/6/2017, B270141, Not to be Published in the Official Reports, at 34-36)

43.    During writ of habeas corpus proceedings, Plaintiff testified that he kept a sleeveless white shirt and towel in the rear cargo area of his vehicle to clean the chrome on his rim; and that the items had red coloring because a week prior to being arrested, he had spilled vodka and ruby red cranberry juice and used the shirt and towel to clean up the spill.  (**Exhibit G**, October 18, 2012 Reporter's Transcript of Proceedings at 53 ln. 1-28; 54 ln. 6-28; 55 ln. 17-28; 56 ln. 1; 57 ln. 7-18.)

44.    During an evidentiary hearing on writ of habeas corpus, Joseph J. Cavaleri, Senior Criminalist, from the Los Angeles County Sheriff's Department Scientific Services Bureau tested the towel and t-shirt, and issued a report confirming that there was no bank dye on the towel and t-shirt.  (**Exhibit H,** April 24, 2015 laboratory examination report of Joseph Cavaleri.)

45.    During an evidentiary hearing on writ of habeas corpus, Criminologist Peter D. Barnett tested the towel and t-shirt, and issued a report confirming that there was no bank dye on the towel and t-shirt.  (**Exhibit I,** October 9, 2012 supplemental report of Peter Barnett.)

///
///
///

**COMPLAINT FOR DAMAGES**

46.     In reversing the Plaintiff's conviction on writ of habeas corpus, the Court of Appeals held:

> **"the only item found on Tarkington that tied him to the robbery was the $200 in cash, which Allen said he gave to Tarkington as payment for the ride. The shirt and towel found in the back of the vehicle were thus used by the prosecution to help directly connect Tarkington to the robbery… Thus, the shirt and towel were not merely cumulative pieces of evidence that tied Tarkington to the robbery without a viable explanation as to how they came into his possession; they were the only items to do so…. Indeed, the case against Tarkington has been reduced to the false name he gave to law enforcement when pulled over— unsurprising given he was still on federal supervised release—and the alleged similarities between Tarkington's height, build, and skin color to one of the robbers.  Even if we apply the trial court's incorrect sufficiency of the evidence standard of review, the case against Tarkington is simply not strong enough to uphold."**

(**Exhibit F**, *In re Lamont T. Tarkington on habeas corpus*, Court of Appeal Second Appellate District Division One, 11/6/2017, B270141, Not to be Published in the Official Reports, at 34-36.)

47.     The Court of Appeals observed that Defendant Detective Brown had "greatly exaggerated" testimony on the bank dye and pepper spray.  (*Ibid* at 36.)

48.     The Court of Appeal granted the petition for writ of habeas corpus, reversed Plaintiff's convictions, and instructed the People to either release Plaintiff from custody or retry him.  (*Ibid* at 38.)

49.     On January 31, 2018, the California Supreme Court denied the Petition for Review seeking to challenge the Court of Appeals' reversal of Plaintiff's convictions. (**Exhibit J,** Docket Sheet, California Supreme Court case no. S245667.)

**E.     THE   RE-TRIAL,   DETECTIVE   BROWN   PLACED   ON   ORWITS   LIST   OF IMPEACHABLE WITNESSES, *YOUNGBLOOD* VIOLATION BY THE PEOPLE, VIOLATION OF COURT ORDER TO PRESERVE EVIDENCE BY THE PEOPLE, AND DISMISSAL OF CHARGES**

50.     On March 16, 2018, the People elected to retry Plaintiff and filed an Amended Information charging Plaintiff with five counts of robbery and one count of burglary.   (**Exhibit K,** Amended Information.)

51.     The Defendants' decision to re-try Plaintiff for the criminal charges was brought without probable cause because the Defendants admitted that it had no new evidence during the retrial, the Court

of Appeals had already held that the evidence against Plaintiff was simply not strong enough to uphold, and Defendant Brown's false testimony was fatal to the Defendants' case. The Defendants' decision to retry Plaintiff was not done to bring Plaintiff to justice but was instead brought for the ulterior purpose of extorting Plaintiff to accept a plea deal so as to shield the Defendants from this civil action for constitutional violations.

52.    On February 7, 2017, District Attorney Jackie Lacey issued Special Directive 17-03 setting forth the Los Angeles County District Attorney's revised policy regarding disclosure of exculpatory and impeachment information pursuant to *Brady v. Maryland* (1963) 373 U.S. 83 (hereinafter *Brady* information) and its progeny and Penal Code section 1054.1(3). Therein, it stated the following:

> "Special Directive also announces the creation of the Officer and Recurrent Witness Information Tracking System (ORWITS). The ORWITS tracks potential impeachment information, as well as information likely to lead to potential impeachment information, involving "recurrent People's witnesses," defined to include, but not limited to, peace officers and experts. The ORWITS is intended to assist deputy district attorneys (DDA) in complying with their disclosure obligations in criminal proceedings. It is also intended to serve as a tool for assessing witnesses, determining the viability of criminal charges, avoiding surprise, and minimizing trial delays. Information formerly included in the *Brady* Alert System remains available through the ORWITS."

(**Exhibit L**, excerpt of Special Directive 17-03 dated February 7, 2017.)

53.    On April 23, 2018, the District Attorney Shannon Sexton produced the ORWITS on Defendant Detective Brown, which stated the following:

> "Detective Lauren Brown was the investigator in MA034011 where defendant Lamont Tarkington was convicted of robbery of a bank. This case was subsequently reversed for ineffective assistance of counsel. During his testimony, Detective Lauren stated that deputies found, and he booked, a short nylon stocking, tied at the top, that contained $59 in coins. He testified that "inside the red dye they use some type of pepper spray because you would smell both." He testified that the dye manufacturer generally places a contaminant in the dye so that, when it explodes, it would incapacitate the individual who is carrying it. He stated, "And you can smell that along, you can see the red dye on—on the change. If you look at the bag, you can see some of the residue that's actually on the bag."

> "Detective Brown next opened a brown paper bag from the evidence box. The detective said there was a tank top and a towel in the bag. He said, can smell that." When asked what was in the bag, he responded that there was a "white ribbed tank top. It has what appear to be red dye stain, the same coloring as the change. And

**COMPLAINT FOR DAMAGES**

when I opened it, I could still smell the pepper spray that they used to put in it." Detective Brown may have gestured with the bag in his hand, because Deputy District Attorney Mesropi asked if he wanted it taken away. The Detective replied, "I know it's kind of a pain, but I can already feel it in my eyes." After the break, he testified that he needed a break because he had felt a burning sensation in his eyes and nose. All parties including Tarkington's attorney agreed that the shirt and towel can be placed in a sealed plastic bag.

"The next day, Tarkington's attorney asked to examine the shirt and towel. She argued that she should be able to open the bag to show the jury whether the shirt and towel had any color. Pointing out that Deputies Wheeler and Giovanni, who conducted the in-field search of the car Tarkington was in, did not mention any odor. She wanted to demonstrate to the jury that items did not have any odor.

"The court intervened and said, "I can tell you that the odor was not good yesterday, and the court was affected by it. I don't think it should be open again."

"In reversing the case on IAC ground, the appellate noted that Detective Brown greatly exaggerated his testimony, and Tarkington's lawyer attempt to show the items to the jury could have blunted Detective Brown's exaggerated testimony. The court overturned the case because it held the defense should have the items tested before trial. Failure to do was IAC."

(**Exhibit M**, ORWITS on Detective Brown produced by District Attorney Shannon Sexton April 23, 2018.)

54.     After the Defendants were put on notice in 2015 that Defendant Brown fabricated evidence, it took no actions to discipline, punish, and/or prosecute Defendant Brown.  Instead, the Defendants continued to condone, ratify and endorse Defendant Brown's wrongful conduct with inaction.

55.     The Defendants continued its ongoing violation of *Brady* by not voluntarily turning over to Plaintiff material, exculpatory and impeachment information regarding Defendant Brown during the retrial.

56.     On May 24, 2018, a hearing was held on Plaintiff's Motion to Dismiss because of lost and/or destroyed evidence (*Trombetta/Youngblood* motion).   The Los Angeles County Sheriff's Department had lost/destroyed evidence in violation of a 2007 Court Order, which included three cell phones, the entire case file, and 911 calls, radio transmissions, and Mobile Digital Transmissions describing the suspects.   For the three cell phones, the People contended that it was delivered to the Superior Court.  Judge Tavelman found that in 2007 the trial judge had issued an Order for the Los Angeles

**COMPLAINT FOR DAMAGES**

County Sheriff's Department to maintain the evidence but failed to do so.  Judge Tavelman granted Plaintiff's *Youngblood* motion by finding that the lost and/or destroyed three cell phones could have been useful in Plaintiff's defense.  The remedy granted by Judge Tavelman for the violations was that Plaintiff may submit jury instructions stating that the Los Angeles County Sheriff's Department violated a Court Order to preserve the evidence and that the lost cell phones may be useful to Plaintiff's defense.  Judge Tavelman also issued an Order that the People may not call Defendant Detective Brown as a witness until the Los Angeles County Sheriff's Department produce records to support the contention that the three cell phones were delivered to the Superior Court.  (**Exhibit N**, May 24, 2018 Reporter's Transcript of Proceedings.)

57.     On May 24, 2018, a hearing on Motions *in limine* was held and Judge Tavelman issued the following Orders:  (1) the People may not introduce evidence at trial regarding Plaintiff's affiliation with gangs, including photographs of Plaintiff displaying gang signs; and (2) the People may not introduce evidence at trial regarding Plaintiff's prior robbery convictions or bad acts.  The People agreed that they did not have shoe prints or forensic evidence (i.e. DNA, fingerprints, or hair fibers) that Plaintiff was at the scene of the robbery.

58.     On May 24, 2018, a hearing was held on Plaintiff's Motion to Dismiss Charges pursuant to Penal Code section 1385.  In support of the Motion, Plaintiff cited the Court of Appeals finding that, "the only item found on Tarkington that tied him to the robbery was the $200 in cash, which Allen said he gave to Tarkington as payment for the ride. The shirt and towel found in the back of the vehicle were thus used by the prosecution to help directly connect Tarkington to the robbery... Thus, the shirt and towel were not merely cumulative pieces of evidence that tied Tarkington to the robbery without a viable explanation as to how they came into his possession; they were the only items to do so… Indeed, the case against Tarkington has been reduced to the false name he gave to law enforcement when pulled over— unsurprising given he was still on federal supervised release—and the alleged similarities between Tarkington's height, build, and skin color to one of the robbers. Even if we apply the trial court's incorrect sufficiency of the evidence standard of review, the case against Tarkington is simply not strong enough to uphold."  Plaintiff argued that the jury was impaneled on May 17, 2018 and the People have not produce any new evidence, significant or otherwise, to reasonably challenge the Court of Appeals' finding that the

evidence against the Plaintiff is simply not strong enough to uphold.  The Judge deferred ruling on the Motion and invited Plaintiff to renew the Motion after the People completed presenting its evidence at trial.

59.    On June 1, 2018, a twelve-person jury and two alternates were sworn in, and the first day of trial commenced.

60.    On June 4, 2018, Judge Tavelman provided the People with Special Jury Instructions to remedy the Los Angeles County Sheriff's Department's violation of a Court Order to preserve evidence, violation of *Youngblood*, and failure to produce supporting documentation that the lost and/or destroyed three cellular phones were delivered to the Court:

**Special Instruction #1 (Violation of Court Order – Cell Phones)**

In 2007, a Superior Court judge issued an order that all evidence in the custody of the Los Angeles County Sheriff's Department be preserved.  This Court has determined that the Sheriff's Department violated the court order without good cause by failing to preserve the following evidence:

1.  Three cellular telephone seized and booked into evidence;
2.  9-1-1 call(s) related to the crimes alleged in this case;
3.  Sheriff Mobile Digital Transmissions related to the crimes alleged in this case;
4.  Sheriff radio transmission related to the crimes alleged in this case;
5.  Three disposable cameras seized and booked into evidence;
6.  The "case file" created by the investigating detectives;

You may presume that the lost or destroyed evidence would have favored the defendant, Mr. Tarkington, but you are not obligated to do so.  You should consider all the evidence presented in the trial in determining what presumptions, if any, to make regarding the violation of the court's order and the missing or destroyed evidence.

It is up to you to determine what if any presumptions to make concerning the violation of the court order and the missing evidence.

**Special Instruction #2 (Failure to Produce Supporting Documentation)**

Prior to trial, this court ordered the District Attorney's Office to coordinate with the Sheriff's Department to produce any and all documentation supporting a claim that lost evidence was released to the Superior Court at a prior hearing.  The Sheriff's Department willfully failed to do so without good cause.  The jury must conclusively presume that no such documentation exists, and reject any claim that lost or destroyed evidence was released to the Superior Court.  Furthermore, unless

**COMPLAINT FOR DAMAGES**

otherwise expressly advised to the contrary by the Court, the jury shall conclusively presume that the Superior Court has no documentation supporting a claim that evidence was previously released to the court.

In evaluation Det. Loren Brown's testimony, the Jury should consider this fact, along with the Instruction concerning witness credibility in general, in evaluating Det. Brown's testimony.

(**Exhibit O**, Special Jury Instructions re: *Youngblood* violation, failure to comply with Court Order to preserve evidence, and failure to produce supporting documentation that three cell phones were delivered to the Court.)

61. Upon receipt of the aforementioned Special Jury Instructions, the People informed the Court that the Special Jury Instructions was fatal to its case. The People stated that Defendant Detective Brown was having difficulty traveling to the Court to testify as a witness. Thus, the People stated that it intended to dismiss the case. The Judge proposed that the People may seek a continuance so as to give Defendant Detective Brown more time to travel to Court to testify as a witness. The People did not request a continuance. The Judge informed the People that jeopardy has attached. Per the request of the People, the Judge dismissed the case on June 4, 2018. (**Exhibit P**, June 4, 2018 Minute Order.)

62. On June 14, 2018, Plaintiff filed a Claim for Damages to Person or Property with the County of Los Angeles for the wrongful acts and injuries occurring from 2005 to 2018. (**Exhibit Q**, Claim For Damages.)

63. On June 18, 2018, the Defendant County of Los Angeles issued a letter denying and investigating the Claim for Damages. (**Exhibit R**, June 18, 2018 letter from the Defendant County of Los Angeles.)

## G.  PARTICIPATION, STATE OF MIND, AND DAMAGES

64. All Defendants acted without authorization of law.

65. Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each Defendant ratified, approved and acquiesced in the violations alleged herein.

66. As joint actors with joint obligations, each Defendant was and is responsible for the failures and omissions of the other.

**COMPLAINT FOR DAMAGES**

16

67. Each Defendant acted individually and in concern with the other Defendants and others not named in violating Plaintiff's rights.

68. Each Defendant acted with deliberate indifference to or reckless disregard for an accused's rights for the truth in withholding evidence from prosecutors and fabricating evidence to prosecutors, for an investigation free of active concealment of material facts, and/or for Plaintiff's right to due process of law.

69. As a direct and proximate results of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, Plaintiff has suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

70. Due to the acts of the Defendants, Plaintiff has suffered, and continues to suffer, and is likely to suffer in the future, extreme and severe mental anguish as well as mental and physical pain and injury. For such injury, Plaintiff will incur significant damages based on psychological and medical care.

71. As a further result of the conduct of each of these Defendants, Plaintiff has lost past and future earnings in an amount to be determined according to proof at trial.

72. As a further result of the conduct of each of these Defendants, Plaintiff has been deprived of familial relationships, including not being able to raise a family.

73. The aforementioned acts of the Defendants, and each of them, was willful, wanton, malicious, oppressive, in bad faith and done with reckless disregard or with deliberate indifference to the constitutional rights of Plaintiff, entitling Plaintiff to exemplary and punitive damages from the individual defendants, other than the County of Los Angeles, in an amount to be proven at the trial of this matter.

74. By reason of the above described acts and omissions of Defendants, Plaintiff was required to retain an attorney to defend against the criminal charges and institute and prosecute the within action, and to render legal assistance to Plaintiff that he might vindicate the loss and impairment of his rights, and by reason thereof, Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. § 1988 and California Civ. Code §52.1 plus a multiplier of four (4).

///

///

///

**COMPLAINT FOR DAMAGES**

## **FIRST CLAIM FOR RELIEF**

### **DEPRIVATION OF CIVIL RIGHTS**

### **42 U.S.C. § 1983, FABRICATION OF EVIDENCE**

### **(Against All Defendants)**

75. Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

76. Defendants Brown, Murren, Young, and Does 1-10, while acting under color of law, deprived Plaintiff of his civil rights, more particularly, his right to due process of law, by providing false evidence in reports and testimony, improperly influencing witnesses and fabricating and concealing evidence, that resulted in depriving Plaintiff liberty because they set in motion a reasonably foreseeable chain of events that led to the presentation of false evidence at Plaintiff's 2007 criminal trial, his conviction and incarceration for at least twelve-years in jail and prison.

77. Each defendant knew or should have known the evidence was false, and each defendant's conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth.

78. Each defendant deliberately mischaracterized the bank dye and pepper spray on the towel and t-shirt, and drafted reports, used investigation techniques, and testified falsely before the jury in a manner so abusive that they knew or should have known that they would, and are known to, yield false evidence. Defendants Brown, Murren, Young, and Does 1-10 concealed and fabricated evidence that led to a false and wrongful conviction.

79. Defendants Brown, Murren, Young, and Does 1-10 knew or should have known that evidence set forth above was false, and that the witnesses were providing false evidence.

80. The constitutional source against using false evidence is primarily the due process clause of the Fifth and Fourteenth Amendments, and Plaintiff's due process rights were violated by the conduct alleged herein.  Plaintiff brings this claim as both a procedural and a substantive due process violation.  To the extent that any court were to conclude that the source of Plaintiff's right to be free from concealed and fabricated evidence that led to a false and wrongful conviction, is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

**COMPLAINT FOR DAMAGES**

81. Where fabrication of evidence has a meaningful connection to a prosecution, conviction and incarceration, an independent cause of action exists under § 1983 for deprivation of substantive due process under the Fourteenth Amendment, despite the existence of probable cause. (*Halsey v. Pfeiffer*, 750 F.3d 273, 292-93 (3ʳᵈ Cir. 2014); see also *Spencer v. Peters*, 857 F.3d 789, 801 (9ᵗʰ Cir. 2017) (rejecting the contention that a plaintiff must "prove that, setting aside the fabricated evidence, probable cause was lacking").)

82. Defendants Brown, Murren, Young, and Does 1-10 were each jointly and severally responsible to not use false evidence against Plaintiff. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

83. As a result of the defendants', and each of their, violations of Plaintiff's constitutional right to not have false evidence turned over to the prosecutors handling this case and ultimately to the defense, Plaintiff was damaged as alleged above.

84. Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees, and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proven at trial and recoverable pursuant to 42 U.S.C. §1988.

85. In acting as alleged herein, Defendants, and each of them, caused Plaintiff severe physical and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

86. The individual Defendants named herein acted with a conscious disregard of Plaintiff's rights, conferred upon him by Section 1983, Title 42 of the United States Code, the Fourth and Fourteenth Amendments to the United States Constitution and California Civil Code Section 3333, by virtue of ensuring Plaintiff was arrested, subject to improper police investigation, and subject to prosecution for crimes he did not commit. Defendants had an interest in seeing to it that Plaintiff was prosecuted for crimes he did not commit for purposes of punishing and harming Plaintiff and for purposes of asserting that the Defendants had apprehended the robbery suspect. Such conduct constitutes malice, oppression and/or fraud under 42 U.S.C. § 1983 and California Civil Code Section 3294, entitling Plaintiff to punitive damages against the individual Defendants in an amount suitable to punish and set an example of.

**COMPLAINT FOR DAMAGES**

**SECOND CLAIM FOR RELIEF**

**JOINT ACTION/CONSPIRACY TO VIOLATE CIVIL RIGHTS**

**42 U.S.C. § 1983, FABRICATION OF EVIDENCE**

**(Against All Defendants)**

87. Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

88. Defendants Brown, Murren, Young, and Does 1-10, were jointly and severally responsible as investigators assigned to the Tarkington case to share material information with each other, and to ensure that any evidence was not fabricated.

89. Defendants Brown, Murren, Young, and Does 1-10, acting under color of state law, acted in concert, conspired and agreed to deprive Plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States, in particular the right to not have false evidence used in the underlying criminal case, as elaborated above.  The use of false evidence, as well as other actions related to the use of such evidences, constitutes an overt act in furtherance of said conspiracy.

90. Alternatively, as joint actors with joint obligations, each of them was and is responsible for the failures and omissions of each other.

91. As a result of Defendants', and each of their, violations of Plaintiff's constitutional rights to not have false evidence used against him, Plaintiff was damaged as alleged above.

92. In acting as alleged herein, Defendants, and each of them, caused Plaintiff severe physical and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

93. Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees, and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proven at trial and recoverable pursuant to 42 U.S.C. §1988.

94. The individual Defendants named herein acted with a conscious disregard of Plaintiff's rights, conferred upon him by Section 1983, Title 42 of the United States Code, the Fourth and Fourteenth Amendments to the United States Constitution and California Civil Code Section 3333, by virtue of ensuring Plaintiff was arrested, subject to improper police investigation, and subject to prosecution for

**COMPLAINT FOR DAMAGES**

20

crimes he did not commit.  Defendants, and each of them, had an interest in seeing to it that Plaintiff was prosecuted for crimes he did not commit for purposes of punishing and harming Plaintiff and for purposes of asserting that the Sheriff's Department had caught the suspect of a robbery.  Such conduct constitutes malice, oppression and/or fraud under California Civil Code Section 3294, entitling Plaintiff to punitive damages against the individual Defendants in an amount suitable to punish and set an example of.

**THIRD CLAIM FOR RELIEF**

**DEPRIVATION OF CIVIL RIGHTS**

**42 U.S.C. § 1983, SUPERVISORIAL LIABILITY**

**(Against Defendants Donald Young, County of Los Angeles, and Does 1-10)**

95. Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

96. During the course and scope of the Tarkington investigation, Defendants Brown and Murren were supervised by Defendant Young.  Defendant Young was an experienced Sergeant, and was obligated to ensure that Defendants Brown and Murren performed their duties as detectives, which would also include ensure that Plaintiff's constitutional rights were protected.

97. On December 14, 2005, the night of the day of the robbery, upon information and belief, Defendant Young was training and supervising Defendants Brown and Murren on the robbery case.  During the entirety of the investigation, Defendant Young was Defendants Brown and Murren's supervisor and trainer.  Upon information and belief, Defendant Young and Doe supervisors within the Los Angeles County Sheriff's Department who were responsible for monitoring Defendants Brown and Murren's performance and conduct as detectives in this investigation, were on notice of his lack of experience and conduct as a robbery detective and failed to take adequate steps to correct it through training or supervision.

98. Upon information and belief, Defendants Brown and Murren received minimal discipline, training, and supervision, which level was grossly insufficient to address the inept, inadequate and deceitful investigation and fabrication of evidence in the Tarkington case.

**COMPLAINT FOR DAMAGES**

99. The inept, inadequate, and deceitful investigation and fabrication of evidence was a highly predictable or plainly obvious consequence of the inadequate training and lack of meaningful control or supervision of Defendants Brown and Murren.

100.     Defendant Young, and Doe supervisors 1-10, acting within the course and scope of their employment had a duty to assure the competence of their employee/agents, including Defendants Brown, Murren and Does 1-10, but breached their duty and were negligent in the performance of their duties by selecting, training, reviewing, supervising, failing to supervise, failing to control, evaluating the competency and retaining Defendants Brown and Murren and other employees/agents.  This breach of the duty of careful selection, training, review, supervision, periodic evaluation of the competency, and retention of such law enforcement officers and/or employees and/or agents created an unreasonable risk of harm to persons such as Plaintiff.

101.     Defendant Young and Doe supervisors 1-10 knew or should have known that Defendants Brown and Murren were unfit and/or incompetent to investigate the robbery due to his lack of experience, unfitness and/or incompetence created a particular risk to others.  The negligence of Defendant Young and Doe supervisors 1-10 in the supervision and training of Defendants Brown and Murren was a substantial factor in the harm caused to Plaintiff by Defendant Young.

102.     Defendant Young and Doe supervisors 1-10 breached their duty of care to observe, report, monitor and control the investigation by Defendants Brown and Murren and other employees/agents.

103.     As a direct and legal result of the aforesaid negligence, carelessness and unskillfulness of Defendant Young and Doe supervisors 1-10, and each of them, and as a result of their breach of duty of care to Plaintiff, Plaintiff suffered the damages alleged herein.

104.     In acting as alleged herein, Defendants, and each of them, caused Plaintiff severe physical and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

105.     Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees, and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proven at trial and recoverable pursuant to 42 U.S.C. §1988.

**COMPLAINT FOR DAMAGES**

23

### FOURTH CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS

### 42 U.S.C. § 1983, MALICIOUS PROSECUTION

### (Against All Defendants)

106.    Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

107.    The Fourth Amendment's protection against unreasonable seizures encompasses the right to be free from malicious prosecution, which is also prohibited by the Fourteenth Amendment's guarantee against the deprivation of liberty without due process of law.

108.    Defendants County of Los Angeles, Young, Murren, Brown, and Does 1-10, while acting under color of state law, violated Plaintiff's clearly established right under the Fourth and Fourteenth Amendments by unlawfully and maliciously causing a criminal prosecution to be instituted against him.

109.    On November 6, 2017, the Court of Appeals reversed Plaintiff's convictions and held:

> "**the only item found on Tarkington that tied him to the robbery was the $200 in cash, which Allen said he gave to Tarkington as payment for the ride. The shirt and towel found in the back of the vehicle were thus used by the prosecution to help directly connect Tarkington to the robbery... Thus, the shirt and towel were not merely cumulative pieces of evidence that tied Tarkington to the robbery without a viable explanation as to how they came into his possession; they were the only items to do so...  Indeed, the case against Tarkington has been reduced to the false name he gave to law enforcement when pulled over— unsurprising given he was still on federal supervised release—and the alleged similarities between Tarkington's height, build, and skin color to one of the robbers. Even if we apply the trial court's incorrect sufficiency of the evidence standard of review, the case against Tarkington is simply not strong enough to uphold.**"

(**Exhibit F**, *In re Lamont T. Tarkington on habeas corpus*, Court of Appeal Second Appellate District Division One, 11/6/2017, B270141, Not to be Published in the Official Reports, at 34-36.)

110.    The opinion of the Court of Appeal coupled with forensic testing revealed to the Defendants that Defendant Brown fabricated evidence, fatally tainted all the evidence, and that there was no probable cause.

111.    The Defendants disregarded the opinion of the Court of Appeals and the forensic testing showing that Defendant Brown fabricated evidence by continuing its ongoing prosecution of Plaintiff for

the robbery on March 16, 2018 by filing the Amended Information, (see **Exhibit K**), thereby forcing Plaintiff to incur unnecessary litigation costs to defend against criminal charges at a second trial.

112.    The Defendants presented no new evidence prior to or during the retrial to support probable cause and warrant retrying Plaintiff for robbery.

113.    A reasonable person in Defendants' position would have known that the facts and circumstances were insufficient to justify a reasonable belief that Plaintiff committed the robbery offense.

114.    On June 4, 2018, the Defendants dismissed all charges against Plaintiff after jeopardy had attached.  (**Exhibit P**.)

115.    Defendants acted maliciously, with reckless disregard of the law and of the legal rights of Plaintiff in causing a criminal proceeding to begin and to continue for a purpose other than bringing Plaintiff to justice.

116.    The Defendants continued its prosecution of Plaintiff for the ulterior purpose of extorting an indigent Plaintiff to make a plea deal so as to shield the Defendants from this civil action.

117.    As a consequence, Plaintiff was subjected to deprivation of liberty during the re-trial, humiliation, fear, pain and suffering by the illegal acts of Defendants and suffered injuries as a result of the Defendants' actions.

118.    Plaintiff is entitled to compensatory damages, punitive damages, attorney's fees under 42 U.S.C. §1988, and all applicable law in a sum to be proven at trial, and such additional relief as the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS

### 42 U.S.C. § 1983, *BRADY* VIOLATIONS

### (Against All Defendants)

119.    Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

120.    Defendants County of Los Angeles, Brown, Young, Murren and Does 1 – 10, while acting under color of law, deprived Plaintiff of his civil rights by violating his right to have material, exculpatory and impeachment information as required by *Brady* turned over to Plaintiff.

**COMPLAINT FOR DAMAGES**

24

121.     The actions of each defendant in withholding evidence were done with deliberate indifference to or reckless disregard for Plaintiff's rights or for the truth.

122.     The *Brady* violations asserted herein encompass, but are not limited to:

A.  Failure to disclose Defendants Brown, Young, and/or Murren's false testimony that there was bank dye and pepper spray on the towel and t-shirt found in the hatchback area of Plaintiff's Dodge Magnum.  Defendants Young and Murren knew or should have known that there was no bank dye and/or pepper spray on the towel and t-shirt, and failed to correct Defendant Brown's false in-court testimony that there was bank dye and pepper spray on the towel and t-shirt.  Each Defendant conspired and acted in concert to fabricate the existence of bank dye and pepper spray on the towel and t-shirt so as to physically place Plaintiff at the scene of the robbery.

B.  Failure to maintain evidence in violation of a Court Order.  On May 24, 2018, Judge Tavelman issued a Court Order that the Los Angeles Sheriff's Department violated a 2007 Court Order to maintain the evidence by losing and/or destroying three (3) cameras seized and booked into evidence, the entire case file created by the investigating detectives, three (3) cellular phones seized and booked into evidence, Sheriff Mobile Digital Transmissions related to the crimes alleged in this case; Sheriff radio transmission related to the crimes alleged in this case, and 9-1-1 call(s) related to the crimes alleged in this case.  (**Exhibit N**.)  Judge Tavelman granted Plaintiff's *Youngblood* motion and held that the lost and/or destroyed three cellular phones could be useful to Plaintiff's defense.  (**Exhibit N**.)  Each Defendant acted in concert and conspired to lose and/or destroy evidence that was useful to Plaintiff's defense.

C.  Failure to turn over the FBI case file/reports describing the robbery suspects and cell phone records.  Subsequent to Plaintiff's convictions in 2007, Plaintiff made a Freedom of Information Act request and discovered that the FBI had participated in the investigation and/or prosecution of the robbery occurring on December 14, 2005.  The FBI case file/reports contain statements that were made by bank tellers Claudia Rissling, Archna Roma Rekhi, Yesenia Bahena, Amori Carias, and Yolanda Moore describing the physical attributes of the robbery suspects.   The FBI reports were material to impeach and/or discredit each bank tellers'

description of the robbery suspects.  The Defendants withheld this evidence to Plaintiff's detriment and in violation of *Brady*.

D.  Failure to disclose material, exculpatory and impeachment information regarding prior acts of racial or ethnic prejudice, dishonesty, false arrest, planting of evidence, fabrication of charges and/or evidence by any and all peace officers who participated in investigating the underlying criminal charges, including but not limited to investigations and disciplinary actions initiated against Defendants Brown, Murren, and Brown for the fabrication of evidence in the underlying criminal case as well as any and all other criminal cases they had participated in.

123.    The constitutional source of the obligation to provide *Brady* information is primarily the due process clause of the Fifth and Fourteenth Amendments, and Plaintiff's due process rights were violated by the conduct alleged herein.  Plaintiff brings this claim as both a procedural and a substantive due process violation.  To the extent that any court were to conclude that the source of Plaintiff's right to *Brady* information is a constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

124.    Defendants County of Los Angeles, Brown, Young, Murren, and Does 1-10 were each jointly and severally responsible to produce *Brady* information to Plaintiff.  Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved, or acquiesced in it.

125.    In acting as alleged herein, Defendants, and each of them, caused Plaintiff severe physical and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

126.    As a result of each Defendants', and each of their, violations of Plaintiff's constitutional right to have *Brady* information turned over to Plaintiff, Plaintiff was deprived of his above described civil rights, and is entitled to damages including, but not limited to general and punitive damages and attorney's fees under 42 U.S.C. §1988.

///

///

///

**COMPLAINT FOR DAMAGES**

### SIXTH CLAIM FOR RELIEF

### JOINT ACTION/CONSPIRACY TO VIOLATE CIVIL RIGHTS

### 42 U.S.C. § 1983, *BRADY* VIOLATIONS

#### (Against all Defendants)

127.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

128.     Defendants County of Los Angeles, Brown, Young, Murren, and Does 1-10 were jointly and severally responsible as investigators assigned to the Tarkington case to share material information with each other, and to ensure that *Brady* information was turned over to Plaintiff.

129.     Each Defendant and Does 1-10, acting under color of state law, acted in concert, conspired and agreed to deprive Plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States, in particular the right to have *Brady* information as set forth above.  Each failure to provide *Brady* information, as well as other actions related to them, constitutes an overt act in furtherance of said conspiracy.

130.     Alternatively, as joint actors with joint obligations, each of them was and is responsible for the failures and omissions of each other.

131.     In acting as alleged herein, Defendants, and each of them, caused Plaintiff severe physical and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

132.     As a result of each Defendants', and each of their, violations of Plaintiff's constitutional right to have *Brady* information turned over to Plaintiff, Plaintiff was deprived of his above described civil rights, and is entitled to damages including, but not limited to general and punitive damages and attorney's fees under 42 U.S.C. §1988.

///

///

///

## SEVENTH CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS

### 42 U.S.C. § 1983, *MONELL* VIOLATIONS

**(Against Defendants County of Los Angeles, McDonnell and Lawrence Beach Allen and Choi PC)**

133.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

134.     Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendants County of Los Angeles, McDonnell, Lawrence Beach Allen and Choi, and Does 1 – 10, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff and others similarly situated, engaged in the unconstitutional conduct and omissions as set forth above, which consist of the following customs and/or policies:

a.   The knowing presentation of false evidence by officers;

b.   The deliberately indifferent presentation of false evidence by officers;

c.   The presentation of false evidence by deputies in reckless disregard for the truth or the rights of the accused;

d.   The destruction of evidence that is material and exculpatory;

e.   Officers' failure to provide material, exculpatory, and impeachment information to prosecutors trying the case involving the criminal defendant;

f.   Failing to adequately train, supervise and control its officers in the investigation and use of evidence, including the prevention of unconstitutional use of fabricated evidence;

g.   Failing to adequately train, supervise and control its officers to disclose to the deputy district attorney prosecuting a defendant all exculpatory and impeachment information, including *Giglio v. United States*, 405 U.S. 150 (1972) and *Brady* information, which would include alternative theories which would support the defense; the disclosure of witness statements who could not identify the criminal defendant; impeachment information concerning the witnesses and officers;

h.   Failing to adequately discipline officers involved in dishonesty, fabrication of evidence, or otherwise abusing their authority;

**COMPLAINT FOR DAMAGES**

28

i.  Condoning and encouraging officers in the belief that they can violate the rights of persons such as Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for promotion and employment benefits;

j.  Condoning and encouraging the withholding and fabrication of evidence including but not limited to the filing of materially false police reports, concealing material evidence, concealing exculpatory evidence, concealing impeachment information, and/or making false statements to prosecutors to obtain the filing of false charges and obtaining false convictions.

135.     The Defendants County of Los Angeles and McDonnell knew or should have known of its peace officers' unconstitutional fabrication of evidence and withholding of material, exculpatory and impeachment information and have a policy, practice and/or custom of not disciplining said peace officers for the unconstitutional conduct, which includes but is not limited to Defendants Brown's, Murren's, and Young's fabrication of bank dye and pepper spray on the towel and t-shirt.

136.     *Brady* requires the disclosure to a criminal defendant "evidence favorable to the accused" that is "material either to guilt or to punishment." (*U.S. v. Bagley* (1985) 473 US 667, 676; *Brady v. Maryland* (1963) 373 US 83, 87.)  The prosecutor's duty to disclose material evidence that is favorable to the accused includes the duty to disclose evidence that would impeach the testimony of material witnesses. (*U.S. v Bagley*, supra; see also *Milke v Ryan* (9th Cir 2013) 711 F.3d 998, 1012 (prosecution had inescapable duty under *Brady* and *Giglio* to disclose court records of police officer's false statements under oath, *Miranda* and other constitutional violations committed during interrogations, and impeachment information contained in officer's personnel file).)

137.     "Exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine *Brady* by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them." (*United States v. Blanco*, 392 F.3d 382, 388 (9th Cir. 2004).)  "*Brady* suppression occurs when the government fails to turn over even evidence that is

**COMPLAINT FOR DAMAGES**

`known only to police investigators and not to the prosecutor.'" (*Youngblood v. West Virginia,* 547 U.S. 867, 869-70 (2006) (per curium) (quoting *Kyles v. Whitley,* 514 U.S. 419, 438 (1995).)

138.    Plaintiff is informed and believes and based thereon alleges that the Defendants County of Los Angeles and McDonnell adopted policies, customs and/or practices to place an undue burden on criminal defendants to obtain material, exculpatory, and impeachment information from a peace officer's personnel file in violation of *Brady*, such as requiring a criminal defendant to file a *Pitchess* motion.

139.    Plaintiff is informed and believes and based thereon alleges that the Defendant County of Los Angeles and McDonnell have maintained and carried out an unconstitutional policy, practice and/or custom of violating the constitutional rights of criminal defendants under *Brady* by refusing to voluntarily produce material exculpatory, and impeachment information under the guise of *Pitchess*, and making the self-serving argument that the privacy rights of its peace officers override that of the criminal defendant thereby unconstitutionally shifting to indigent criminal defendants the initial burden of overcoming the unconstitutional procedures in *Pitchess*, which is illustrated as follows:

a. *Brady* list – the Los Angeles County Sheriff's Department created a "*Brady*" list of 300-plus deputies whose personnel files contain sustained allegations of misconduct allegedly involving moral turpitude, tampering with evidence, or other similar bad acts relevant to impeachment, and have refused to disclose it to criminal defendants pursuant to *Brady* by invoking the unconstitutional procedures of *Pitchess*.

b. Los Angeles County Deputy Sheriff James Peterson (hereinafter "Deputy Peterson") (see **Exhibit S**, District Attorney's Charge Evaluation Worksheet) – Deputy Peterson regularly invoked *Pitchess* in State Court to prevent criminal defendants from obtaining information bearing on his truthfulness and credibility. In cases where Deputy Peterson was a potential witness, only 2 of 170 criminal defendants facing felony charges tried to obtain information about past complaints against Deputy Peterson, and in those 2 cases the defense was provided little information on Deputy Peterson. Most of the criminal defendants accepted plea deals offered by prosecutors before Deputy Peterson was called to testify. These criminal defendants were summarily denied access to Deputy Peterson's personal file under *Pitchess* putting them at a clear disadvantage in defending against the criminal

charges and plea bargaining.   Had the Defendants County of Los Angeles and Jim McDonnell complied with their obligations under *Brady*, the same criminal defendants would not have been disadvantaged.  In a Federal criminal matter involving Cesar Castillo Flores and Manuel Moreno whom Deputy Peterson arrested with nearly 9-pounds of methamphetamine and a gun, defense attorneys argued that the drugs and weapon should be thrown out as evidence because Deputy Peterson had violated the men's constitutional rights by stopping and searching their car without justification.  U.S. District Judge Snyder reviewed Deputy Peterson's personnel file and discovered that he was involved in two incidents that resulted in punishment, one from 1998 and another in 2012.  In one of the incidents, Judge Snyder noted that Peterson had been suspended for breaking a department rule and being "less than truthful" in some way.  Judge Snyder did not describe other instance of misconduct, but defense attorneys claimed in court filings that Peterson had been found "lying to his supervisors regarding the … misconduct" in both episodes.  The government also disclosed documents from an investigation into whether Deputy Peterson had lied about a 2014 traffic stop.  After the personnel reports about Deputy Peterson were disclosed, federal prosecutors in the case against Flores and Moreno opted not to call Deputy Peterson to testify about the traffic stop and instead relied on footage from the camera in Deputy Peterson's car allegedly showing he had been justified in stopping and searching the men's vehicle.  Judge Snyder disagreed, saying the video was inclusive, tossed out the drugs and gun as evidence, and federal prosecutors dismissed the case.  The government dismissed 7 out of 10 federal cases based on Deputy Peterson's arrests.  The Defendants regularly denied criminal defendants access to material, exculpatory, and impeachment information regarding Deputy Peterson under *Brady* by invoking the unconstitutional procedures set forth in *Pitchess*.

c. Los Angeles County Deputy Christina Chamness ("Deputy Chamness") (see **Exhibit T**, Incident Report, Corrective Action Report, and Settlement civil action) – Deputy Chamness was suspended 25-days for writing a false report and use of unreasonable force.  In 2007, Deputy Chamness pepper-sprayed an elderly Army veteran in the face and

arrested him claiming that the man blocked the path of deputies and then advanced on Deputy Chamness.  However, security recording showed that the 73-year-old man never blocked the deputies or advanced on Chamness.  The Defendants regularly denied criminal defendants access to material, exculpatory, and impeachment information regarding Deputy Chamness under *Brady* by invoking the unconstitutional procedures set forth in *Pitchess*.

d.  Los Angeles County Deputy William Cordero ("Deputy Cordero") (see **Exhibit U**, Discipline Letter) – According to a Times article, Deputy Cordero wrote a false report that failed to mention a civilian who was riding in his patrol vehicle and witnessed a crime.  He was subjected to discipline and suspension of 15-days.  As of December 2017, Deputy Cordero was working at the Avalon Station.  The Defendants regularly denied criminal defendants access to material, exculpatory, and impeachment information regarding Deputy Cordero under *Brady* by invoking the unconstitutional procedures set forth in *Pitchess*.

e.  Los Angeles County Deputy David Anthony Hernandez ("Deputy Hernandez") (see **Exhibit V**, Excerpt of Transcript) – In the matter of *People v. Frisco Carntez*, Case No. VA101800, Deputy Hernandez testified at a preliminary hearing that he ran the license plate of Carntez and discovered arrest warrants associated with the vehicle's registered address.  Deputy Hernandez approached Carntez, detained him, and found a baggie of cocaine in his wallet.  Carntez's defense attorney obtained sheriff's records proving that the deputy had ran the license plate after the arrest, not before.  When confronted, Deputy Hernandez said he may have made a mistake.  The case was dismissed and Deputy Hernandez was charged with perjury and filing a false report.  Deputy Hernandez pleaded no contest to a misdemeanor charge of filing a false report, ordered to perform 250-hours of community service, and placed on probation for 2-years.  As of August 2017, Deputy Hernandez was assigned to the Industry station.  The Defendants regularly denied criminal defendants access to material, exculpatory, and impeachment information regarding

Deputy Hernandez under *Brady* by invoking the unconstitutional procedures set forth in *Pitchess*.

 f. Los Angeles County Deputy Jose Ovalle ("Deputy Ovalle") (see **Exhibit W**, Charge Evaluation Worksheet, Letters re: Disciplinary Action) – In 2003, an inmate's shirt was bloodied from a jailhouse brawl and lost.  Deputy Ovalle grabbed a shirt out of the jail laundry, doused it with taco sauce and snapped a photo of faked blood before booking it into evidence.  He was suspended for 30-days.  In 2009, a prosecutor learned of the taco sauce incident and the District Attorney's Office declined to prosecute Deputy Ovalle because the legal deadline for charging someone with manufacturing evidence had passed. The Defendants regularly denied criminal defendants access to material, exculpatory, and impeachment information regarding Deputy Ovalle under *Brady* by invoking the unconstitutional procedures set forth in *Pitchess*.

 g. Los Angeles County Sheriff Deputy John Sanchez ("Deputy Sanchez") (see **Exhibit X**, Charge Evaluation Worksheet) - Deputy Sanchez had obtained a Judge's signature on a search warrant.  Deputy Sanchez used an outdated form and doctored the document because he did not want to wait for the Judge to fix the error.  Deputy Sanchez was suspended for false statements and putting false information in records.  As of August 2017, Deputy Sanchez was still with the Lennox station.  The Defendants regularly denied criminal defendants access to material, exculpatory, and impeachment information regarding Deputy Sanchez under *Brady* by invoking the unconstitutional procedures set forth in *Pitchess*.

140. Plaintiff is informed and believes and based thereon alleges that the Defendants County of Los Angeles and McDonnell adopted policies, customs and/or practices to place undue burdens on criminal defendants to obtain material, exculpatory, and impeachment information from a peace officer's personnel file in violation of *Brady*, such as requiring a criminal defendant to file a *Pitchess* motion.

141. Plaintiff is informed and believes and base thereon alleges that the Defendant Lawrence Beach Allen and Choi acted in concert, conspired and agreed with the Defendants County of Los Angeles and McDonnell to deprive Plaintiff as well as other similarly situated criminal defendants of the rights,

**COMPLAINT FOR DAMAGES**

33

privileges, and/or immunities secured by the Constitution and laws of the United States, in particular the right to have *Brady* information as set forth above.  The Defendant Lawrence Beach Allen and Choi have represented and continues to represent the Los Angeles County Sheriff's Department in cases regarding misconduct by Deputy Sheriffs and withholding of *Brady* information under the guise of *Pitchess*.  In the matter of *Jacqueline Medina v. County of Los Angeles*, Los Angeles Superior Court Case no. BC460572, the Defendant Lawrence Beach Allen and Choi were aware of Deputy Jose Ovalle intimidating witnesses, falsifying police reports, committing crimes, falsifying evidence, and planting evidence in or about 2011. Deputy Jacqueline Medina witnessed Deputy Jose Ovalle stealing about $10,000.00 from a suspect named Ysaguire Edelberto's safety deposit box, searching the suspect's home without consent, and falsifying reports about the money and search.  Deputy Jacqueline Medina witnessed Deputy Jose Ovalle move a vehicle from a suspect's apartment into the middle of the street, have the vehicle impounded, and falsified police reports.  The Defendants County of Los Angeles and Lawrence Beach Allen and Choi were made aware of the illegal activities of Deputy Sheriffs, such as Deputy Jose Ovalle, and took no action to remedy or address the misconduct and illegal activities of Deputy Sheriffs such as Deputy Jose Ovalle.  The Defendant Lawrence Beach Allen and Choi acted in concert, conspired and agreed with the Defendants County of Los Angeles and McDonnell to suppress *Brady* information regarding Deputy Sheriffs, such as Deputy Jose Ovalle, from similarly situated criminal defendants under the guise of *Pitchess*.  Each failure to provide *Brady* information, as well as other actions related to them, constitutes an overt act in furtherance of said conspiracy.

142.     The actions, or lack thereof, of the Defendants County of Los Angeles, McDonnell and Lawrence Beach Allen and Choi set forth in this complaint were known or should have been known to the policy makers responsible for the Defendants and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or the substantial likelihood that constitutional rights would be violated as a result of failing to train, supervisor or discipline in areas where the need for such training and supervision was obvious.

143.     Defendants County of Los Angeles, McDonnell, and Lawrence Beach Allen and Choi's actions as set forth above were a motivating force behind the violations of Plaintiff's rights as well as other similarly situated criminal defendants as set forth in this complaint.

**COMPLAINT FOR DAMAGES**

144.     As a direct and proximate result of the Defendants' acts and omissions, condoning, encouraging, ratifying and deliberately ignoring the pattern and practice of Defendants Brown, Young, Murren and other peace officers Plaintiff has yet to identify, Plaintiff and other similarly situated criminal defendants sustained injury and damage.

145.     As a result of each of Defendants violations of Plaintiffs' constitutional rights, as set forth herein, Plaintiffs sustained injury and damage.

146.     As a result of this unconstitutional policy, practices and/or customs, criminal defendants, such as Plaintiff, have been denied material, exculpatory and impeachment information to defend against criminal charges arising from the investigation of the aforementioned peace officers

147.     In acting as alleged herein, Defendants, and each of them, caused Plaintiff severe physical and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

148.     Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees, and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proven at trial and recoverable pursuant to 42 U.S.C. §1988.

## EIGHTH CLAIM FOR RELIEF

### VIOLATION OF CIVIL CODE §§ 51 *ET. SEQ.* AND 52

### (Against All Defendants)

149.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

150.     Defendants acting within the scope of their duties as County of Los Angeles police officers wrongfully caused Plaintiff to be arrested, put in jail, and subjected to criminal felony charges based upon his race and due to coercion, intimidation and threats, in violation of Civil Code §§ 51 *et. seq.* and 52.1.

151.     Pursuant to Cal. Govt. Code §815.2, Defendant County of Los Angeles is hereby liable for the acts, omissions and conduct of its employees Defendants Brown, Murren, Young, and Does 1-10 whose tortious conduct was a cause in the damages and injuries to Plaintiff.

152.     Plaintiff timely filed a Claim for Damages pursuant to Cal. Govt. Code §910 *et. seq.* This action is therefore timely.

**COMPLAINT FOR DAMAGES**

153.     The conduct of the Defendants constituted interference by threats, intimidation, or coercion, or attempted interference, with the exercise of enjoyment by Plaintiff of rights secured by the Constitution or laws of the United States, or secured by the Constitution or laws of the State of California, including interference with Plaintiff's rights to be secure in his person and free from unlawful arrest under the Fourth Amendment and Cal. Const. Art. 1 sec. 13 as well as Cal Civ. Code § 43.

154.     As a direct cause of Defendants' conduct, Plaintiff's rights pursuant to California Civil Code §52.1 were violated, causing injuries and damages in an amount to be proved at the time of trial.

155.     In acting as alleged herein, Defendants, and each of them, caused Plaintiff severe physical and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

156.     Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorney's fees and will continue to incur attorney's fees, and pursuant to California Cal. Civ. Code § 52.1, Plaintiff is entitled to reasonable attorney's fees.

157.     The conduct of the Defendants also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294 et. seq. and punitive damages should be assessed against each individual Defendant, other than the County of Los Angeles, for the purpose of punishment and for the sake of example.  Defendant County of Los Angeles is liable for the acts of its employees as they have agreed with and/or ratified the acts of the individual defendants.

<u>**NINTH CLAIM FOR RELIEF**</u>

**VIOLATION OF STATE DUE PROCESS, CAL CONST. ART. I § 7(a)**

**(Against All Defendants)**

158.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

159.     This is a state law claim for damages in excess of the jurisdictional amount.

160.     At all times material times mentioned herein, the actions of Defendants Brown, Young, Murren, County of Los Angeles, and Does 1-10 were done in an intentional or negligent manner and, specifically, Defendants Brown, Young, Murren acted in an intentional, negligent or careless manner and was reckless, grossly negligent or negligent in failing to abide or refusing to abide by Plaintiff's right to

**COMPLAINT FOR DAMAGES**

be free from deprivation of liberty without due process.  In addition, these defendants failed to provide adequate remedial measures upon discovery that evidence was falsified, contaminated, or an investigation was corrupted by impermissible activities.

161.     Prior to the institution of this action, Plaintiff gave notice of this claim to the Defendant County of Los Angeles and the Los Angeles County Sheriff's Department and performed all conditions precedent to this action including compliance with California Government Code Section 911.2.

162.      Plaintiff has been greatly humiliated and held up to public scorn and derision as a result of the foregoing acts of all Defendants.  Additionally, Plaintiff has been forced to incur substantial amounts for attorneys' fees, investigation expenses, and other expenses in the vindication of his constitutional rights.

163.     In acting as alleged herein, Defendants, and each of them, caused Plaintiff severe physical and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

164.     As a direct, proximate and foreseeable result of Defendants County of Los Angeles, Brown, Young, and Murren's acts and omissions, Plaintiff suffered loss of life, liberty and freedom, and other privileges of free society resulting in mental anguish, loss of enjoyment of life, loss of reputation, discomfort, inconvenience, loss of time, loss of wages and other monetary losses; the injuries are permanent or continuing and Plaintiff will suffer such losses in the future.

## TENTH CLAIM FOR RELIEF

### FALSE IMPRISONMENT

### (Against All Defendants)

165.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

166.     As fully described above, Defendants Brown, Murren, and Young falsified evidence, which resulted in the criminal conviction and incarceration of Plaintiff for at least twelve years until the District Attorney dismissed the charges against Plaintiff on June 4, 2018 due to, inter alia, lack of evidence against Plaintiff.  (**Exhibit P**.)

**COMPLAINT FOR DAMAGES**

167.     Defendants Brown, Murren, and Young intentionally made misrepresentations of fact and falsified evidence which was presented in criminal court hearings against Plaintiff.  At the time of these misrepresentations and accusations, Defendants Brown, Murren, and Young were aware of their falsity and inaccuracy.  As a result of these false allegations, Plaintiff was denied bail and unlawfully tried and imprisoned.

168.     Plaintiff has been greatly humiliated and held up to public scorn and derision as a result of the foregoing acts of all Defendants.  Additionally, Plaintiff has been forced to incur substantial amounts for attorneys' fees, investigation expenses, and other expenses in the vindication of his constitutional rights.

169.     As a direct, proximate and foreseeable result of all the Defendants' acts and omissions, Plaintiff suffered loss of life, liberty and freedom, and other privileges of free society resulting in mental anguish, loss of enjoyment of life, loss of reputation, discomfort, inconvenience, loss of time, loss of wages and other monetary losses; the injuries are permanent or continuing and Plaintiff will suffer such losses in the future.

170.     The acts of Defendants Brown, Murren, and Young as herein alleged, were willful, wanton, malicious, and oppressive, and justify the awarding of punitive damages in an amount subject to proof at trial.

## ELEVENTH CLAIM FOR RELIEF

### NEGLIGENT HIRING, SUPERVISION, DISCIPLINING AND RETAINING DEPUTY SHERIFFS

#### (Against Defendant County of Los Angeles, and Does 1-10)

171.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

172.     Plaintiff is informed and believes, and thereon alleges that Defendants Brown, Murren, Young, and Does 1-10 each had a history and propensity for acts of the nature complained of herein and manifested such propensity prior to their employment as County of Los Angeles Deputy Sheriffs by the Defendant County of Los Angeles.  Plaintiff is further informed and believes and thereon alleges that Defendant County of Los Angeles knew, or in the exercise of reasonable care should have known of such

prior acts at the time such individual defendants were hired by the Defendant County of Los Angeles and Los Angeles County Sheriff's Department.  Defendant County of Los Angeles and Los Angeles County Sheriff's Department's disregard of this knowledge or failure to adequately investigate and discover the facts constitutes negligent hiring.

173.     Plaintiff is informed and believes and thereon alleges that after being employed and appointed as County of Los Angeles Deputy Sheriffs for and by the Defendant County of Los Angeles and Los Angeles County Sheriff's Department, and prior to the commission of the acts complained of herein, Defendants Brown, Murren, Young, and Does 1-10, acting under the color of their authority as Los Angeles County Deputy Sheriffs, and in the course and scope of their employment as such, committed similar acts and inflicted similar injuries and damages upon other persons without reasonable cause or justification.  Plaintiff is further informed and believe and thereon allege that Defendant County of Los Angeles and McDonnell knew, or in the exercise of reasonable care, should have known of these prior acts and that such Deputy Sheriffs were unfit and prone to commit them but negligently failed to take steps to properly train, supervise, discipline and/or terminate the officer's employment.

174.     As a proximate result of the negligence of Defendant County of Los Angeles and Los Angeles County Sheriff's Department, Plaintiff was damaged and injured as alleged in the preceding paragraphs.

175.     The aforesaid neglect, failure and refusal to instruct and train constituted execution of the policies, customs, and practices of the Defendant County of Los Angeles and Los Angeles County Sheriff's Department.

176.     The aforesaid neglect, failure and refusal to instruct and train, and promulgation and enforcement of policies, practices and customs constituted an execution of the policies, practices and customs of the Defendant County of Los Angeles and McDonnell.

177.     As a direct and proximate result of the foregoing, Plaintiff was deprived of his above described civil rights and is entitled to damages including, but not limited to general and punitive damages and attorney's fees.

WHEREFORE, Plaintiff, LaMont Tarkington, requests relief on his own behalf as follows, and according to proof, against each Defendant:

**COMPLAINT FOR DAMAGES**

1. General and compensability damages in any amount according to proof;

2. Special damages in any amount according to proof;

3. Exemplary and punitive damages against each Defendant in their individual capacities, other than the County of Los Angeles, in an amount according to proof;

4. Cost of suit, including attorney's fees, under 42 U.S.C. 1988 and California Civ. Code §52.1 plus a multiplier of four (4);

5. Interest as allowed by law;

6. Injunctive relief barring Defendants from falsifying evidence and ongoing violation of *Brady*; and

7. Such other relief as may be warranted or as is just and proper.

Respectfully submitted,

DATED:  August 30, 2018                    By:_____

Leo James Terrell, Esq.

**COMPLAINT FOR DAMAGES**

1

**JURY DEMAND**

Trial by jury on all issues is demanded.

Respectfully submitted,

DATED:  August 30, 2018          By:_____

Leo James Terrell, Esq.

**COMPLAINT FOR DAMAGES**