UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMONT TARKINGTON,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, *et al.*,<br><br>Defendants. | Case No.: CV 18-07636-CJC-JC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [Dkt. 49]** |

**I. INTRODUCTION**

On August 31, 2018, Plaintiff LaMont Tarkington filed this civil rights action against Defendants County of Los Angeles ("County"), Los Angeles County Sheriff's Department ("Sheriff's Department"), Los Angeles County Sheriff Jim McDonnell, Sherriff Detectives Lauren Brown and James Murren, Sheriff Sergeant Donald Young, and Does 1 through 10.  (Dkt. 1 [Complaint, hereinafter "Compl."].)  Plaintiff generally

alleges that Defendants conspired to fabricate evidence, proffer false testimony, and wrongfully prosecute Plaintiff in conjunction with a December 14, 2005 robbery of a Bank of America in Palmdale, California.

The operative First Amended Complaint asserts claims under 42 U.S.C. § 1983 for (1) fabrication of evidence, (2) conspiracy to fabricate evidence, (3) supervisory liability, (4) malicious prosecution, (5) *Brady* violations, (6) conspiracy to commit *Brady* violations, and (7) *Monell* violations, and state law claims for (8) deprivation of due process in violation of the California Constitution, and (9) negligent supervision, discipline, and retention of sheriff's deputies. (*See generally* Dkt. 35 [First Amended Complaint, hereinafter "FAC"].)[1]  Before the Court is Plaintiff's motion for partial summary judgment as to his first claim for fabrication of evidence. (Dkt. 49.)  For the following reasons, the motion is **DENIED**.[2]

## II. BACKGROUND

### A. Plaintiff's Arrest and Trial

This action arises out of the investigation, prosecution, and conviction of Plaintiff for a bank robbery that he claims he did not commit. On December 14, 2005, three masked men robbed tellers at a Bank of America in an Albertsons supermarket in Palmdale, California. (Dkt. 57 [Pl.'s Reply to Defs.' Statement of Genuine Disputes, hereinafter "SGD"] 1.)  They took approximately $12,000. (SGD 2.)  The stolen money

---

[1] The Court dismissed with prejudice Plaintiff's claims for false imprisonment and violation of the Unruh Civil Rights Act and Bane Act. (*See* Dkt. 44.)

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for April 15, 2019, at 1:30 p.m. is hereby vacated and off calendar.

included at least one dye pack designed to explode and spray red dye, and "bait money," or bills with recorded serial numbers. (SGD 3.)

Later that day, several Sheriff's Department deputies not party to this action stopped Plaintiff and his co-defendant, Darris Allen, for a routine traffic violation about 60 to 70 miles away from the bank. (SGD 4–5.) Plaintiff and Allen were driving a Dodge Magnum. (*Id*.) During a search of the vehicle, the deputies found a black plastic bag wedged between the driver's seat and center console that contained over $3,000 in currency stained with red dye. (Dkt. 58 [Pl.'s Response to Defs.' Counterstatement of Undisputed Material Facts, hereinafter "UMF"] B.) One of the deputies also found $200 in Plaintiff's pants pocket that had red dye and allegedly smelled of bleach. (*Id*.) After the initial search of the Dodge Magnum, Plaintiff was arrested for an outstanding warrant and the vehicle was impounded. (SGD 49.)

Three days after Plaintiff's arrest and the initial search of the Dodge Magnum, Defendants Brown, Murren, and Young searched the vehicle while it was in police custody at a tow yard. (SGD 51.) During that search, the officers reported finding an additional $59 in coins stained with red dye and certain "clothing" items, which they booked into evidence. (SGD 53, 57, 60, 61.) Photographs from the search show that a red-stained T-shirt and towel were among the "clothing" items found in the vehicle, (SGD 60), although the officers' report does not mention the presence of red dye on either, (SGD 62). Nonparty Deputy Moreno, who conducted the initial search of the Dodge Magnum, testified that she had observed the towel and T-shirt in the back of the vehicle but, at the time, did not "associate them with the crime that had occurred." (SGD 23.)

On December 15, 2005, Plaintiff was charged with felony robbery and burglary. (SGD 68.) At trial, the prosecutor relied on the red-stained T-shirt and towel without

testing either item for the presence of bank dye.  (SGD 76.)  Plaintiff was convicted of five counts of second degree robbery on March 27, 2007.  (SGD 94.)  According to Plaintiff, his conviction was premised largely on Defendants Brown, Murren, and Young's purportedly false testimony that the T-shirt and towel seized from the Dodge Magnum contained bank dye.

### B.  Post-Conviction Proceedings

Years later on October 14, 2011, Plaintiff filed a petition for habeas corpus alleging ineffective assistance of counsel.  (SGD 96.)  Belated forensic testing of the T-shirt and towel had shown that neither contained evidence of the type of red dye used in bank dye packs.  (SGD 100–02.)  On October 20, 2017, the appellate court reversed Plaintiff's convictions based on ineffective assistance of counsel because Plaintiff's counsel failed to test the T-shirt and towel for bank dye prior to the trial.  (*See* SGD 104; Dkt. 50-2.)[3]  The court found that Detective Brown "effectively conducted a live 'test' from the witness stand" when he testified that the T-shirt and towel smelled of pepper spray and had the same red dye as the other items seized.  (Dkt. 50-12 at 28.)  The court instructed the prosecution to either release Plaintiff from custody or retry him.  (SGD 110.)[4]

---

[3] Plaintiff requests that the Court take judicial notice of the appellate court's decision.  (Dkt. 52.)  Courts regularly take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted).  Accordingly, Plaintiff's request is GRANTED.

[4] Defendants object to the appellate court's decision as inadmissible hearsay.  Because the Court does not rely on the decision for the truth of the matter it asserts, the Court need not rule on Defendants' objection.

The State initially elected to retry Plaintiff and filed an Amended Information on March 16, 2018. (FAC ¶ 179; *id*. Ex. 25.) Before proceeding to trial, the State dismissed the action on June 4, 2018. (*See id*. ¶ 255.)

### C. Current Proceeding

Plaintiff filed the instant action on August 31, 2018. On January 16, 2019, the Court granted in substantial part Defendants' motion to dismiss. (Dkt. 34.) The Court denied the motion as to Plaintiff's first claim for fabrication of evidence to the extent the claim is premised on Defendants' purported pretrial effort to tamper with or fabricate evidence. Plaintiff now moves for partial summary judgment on his first claim for fabrication of evidence. (Dkt. 49 [hereinafter "Mot."].)

## III. LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)–(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient

to raise triable issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

## IV. ANALYSIS

Plaintiff seeks partial summary judgment on his first claim for fabrication of evidence in violation of 42 U.S.C. § 1983. To state a claim for fabrication of evidence, a plaintiff must show "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted). According to Plaintiff, he is entitled to summary judgment on the issue of whether "the bank dye evidence on the towel and T-shirt introduced and received [in Plaintiff's criminal trial] was false evidence." (Mot. at 5.)

It is well established that a witness who offers testimony at trial, including perjured testimony, is subject to "absolute immunity from liability for civil damages under 42 U.S.C. § 1983." *Franklin v. Terr*, 201 F.3d 1098, 1099 (9th Cir. 2000). "Absolute witness immunity" also "extends to preparatory activities 'inextricably tied' to testimony, such as conspiracies to testify falsely." *Lisker v. City of L.A.*, 780 F.3d 1237, 1241 (9th Cir. 2015). "Were it otherwise, a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves." *Rehberg v. Paulk*, 566 U.S. 356, 368 (2012) (internal quotation marks omitted). However, "immunity for pre-testimony conduct . . . is not limitless." *Lisker*, 780 F.3d at 1242 (quoting *Paine v. City of Lompoc*, 265 F.3d 975, 981 (9th Cir. 2001)).

Rather, the Court must distinguish "conspiracies to testify falsely from 'non-testimonial' acts, such as tampering with documentary or physical evidence or preventing witnesses from coming forward." *Id*. (citation omitted). For instance, "a pretrial, out-of-court effort to . . . fabricate physical evidence . . . is not inextricably tied—or tied at all—to any witness' own testimony, even [i]f a potential witness does happen to be involved." *Id*. (citation and quotation marks omitted).

Plaintiff has failed to marshal any evidence suggesting that Defendants engaged in a pretrial, out-of-court effort to fabricate the existence of bank dye on the towel and T-shirt. The uncontroverted evidence establishes that the red-stained towel and T-shirt belong to Plaintiff and were in the Dodge Magnum at the time of Plaintiff's arrest. (*See* Dkt. 55-1 [Declaration of Koren L. Bell] Ex. A [Transcript of Plaintiff's Testimony at Trial] at 43:7–9; 54:22–26, 57:16–20 [testifying that prior to his arrest, Plaintiff spilled cranberry juice and used the T-shirt and towel to clean the spill].)[5] Detective Brown's report of the impound search catalogued both items as "numerous articles of clothing (EV 19 & 20) in the rear of the vehicle." (Dkt. 50-1 at 153.) At no point does the report state that either the towel or the T-shirt contained "bank dye." (*See id*.) After the items were booked, they remained in evidence storage until Plaintiff's trial. (UMF C.) Plaintiff offers no evidence that suggests Defendants contaminated the towel and T-shirt with bank dye after booking them into evidence. Indeed, Plaintiff's own post-conviction testing showed that neither item tested positive for bank dye. (*See* Compl. ¶¶ 44–45; FAC ¶¶ 172–74; Mot. at 16.)

Given that it is undisputed that bank dye was never found on the towel and T-shirt, Plaintiff seemingly contends that Defendants "fabricated" the presence of bank dye merely by documenting and photographing the red-stained towel and T-shirt as evidence

---

[5] Plaintiff raises several objections to evidence cited by Defendants. (Dkts. 57, 58.) As the Court does not rely on the contested evidence, it need not address Plaintiff's objections.

relevant to the robbery. (*See* Mot. at 16–17.) Plaintiff was arrested after deputies found over $3,000 in currency stained with red dye in the Dodge Magnum and over $200 stained with red dye on Plaintiff's person. Plaintiff fails to explain how merely booking other red-stained items into evidence in that context constituted a falsification of evidence. After all, Plaintiff does not dispute that the towel and T-shirt contained red stains, belonged to him, and were in his vehicle when he was arrested. Further, Plaintiff has failed to establish that Defendants deliberately misrepresented that either item was relevant to Plaintiff's case. Because neither the prosecution nor defense tested the items for the presence of bank dye prior to Plaintiff's trial, there is no evidence that Defendants knew the red stains were not bank dye. In any event, neither item was introduced at Plaintiff's preliminary hearing, at which the judge determined there was probable cause for the charges against Plaintiff. (SGD 71.) Accordingly, Plaintiff has failed to explain how booking the towel and T-shirt into evidence constituted "fabrication," let alone deprived Plaintiff of his constitutional rights.

To the extent Plaintiff again attempts to premise his first claim for fabrication of evidence on Defendants' conduct at trial,[6] Defendants are entitled to immunity for the reasons already stated in the Court's prior order. (*See* Dkt. 34 at 7–8.) Because Plaintiff has failed to point to any evidence that indicates Defendants engaged in a pretrial, out-of-court effort to fabricate evidence of bank dye on the towel and T-shirt, Plaintiff's motion for partial summary judgment is **DENIED**.[7]

---

[6] *See* Mot. at 3 ["The People told the jury Plaintiff was connected to the robbery because the towel and T-shirt were found in his car and had bank dye."]; *id*. at 10 ["At the criminal trial, Deputy District Attorney Frederick Mesropi used the towel and T-shirt to directly connect Plaintiff to the bank robbery."]; *id*. at 11–12 [discussing the prosecution's introduction of the T-shirt and towel as Exhibit 59]; *id*. at 16 ["The People used the towel and T-shirt to directly connect Plaintiff to the bank robbery by telling the jury that they were found in Plaintiff's car and had bank dye."].

[7] In their opposition, Defendants ask the Court to "grant Defendants *sua sponte* summary judgment" on Plaintiff's first claim for fabrication of evidence. (Dkt. 56 at 16–17.) Given that discovery remains open and Plaintiff's claim seemingly encompasses more than just the towel and T-shirt, the Court finds that granting Defendants summary judgment would be premature.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is **DENIED**.

DATED:   April 8, 2019

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE