UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMONT TARKINGTON, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF LOS ANGELES, *et al.*, <br><br> Defendants. | Case No.: CV 18-07636-CJC-JC <br><br><br> **ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [Dkt. 84]** |

**I. INTRODUCTION**

On August 31, 2018, Plaintiff LaMont Tarkington filed this civil rights action against Defendants County of Los Angeles ("County"), Los Angeles County Sheriff's Department ("Sheriff's Department"), Los Angeles County Sheriff Jim McDonnell,

Sherriff Detectives Lauren Brown and James Murren, Sheriff Sergeant Donald Young, Lawrence Beach Allen and Choi PC, and Does 1 through 10.  (Dkt. 1 [Complaint, hereinafter "Compl."].)  Plaintiff alleges that Defendants conspired to fabricate evidence, proffer false testimony, and wrongfully prosecute Plaintiff in conjunction with a December 14, 2005 robbery of a Bank of America in Palmdale, California.

The operative First Amended Complaint asserts claims under 42 U.S.C. § 1983 for fabrication of evidence, supervisory liability, malicious prosecution, *Brady* violations, and *Monell* liability, and state law claims for deprivation of due process and negligent supervision and retention of sheriff's deputies.  (*See generally* Dkt. 35 [First Amended Complaint, hereinafter "FAC"].)[1]  Before the Court is Defendants' motion for judgment on the pleadings.  (Dkt. 84.)  For the following reasons, the motion is **DENIED**.

## II.  BACKGROUND

### A.    Plaintiff's Arrest and Trial

This action arises out of Plaintiff's 2007 conviction for bank robbery.  On December 14, 2005, three masked men robbed tellers at a Bank of America in an Albertsons supermarket in Palmdale, California.  (FAC ¶ 29.)  They took approximately $12,000.  (*Id.*)  The stolen money included a dye pack designed to spray red dye and "bait money" with recorded serial numbers.  (*Id.*)

Hours after the robbery, several Sheriff's Department deputies not party to this action stopped Plaintiff and his co-defendant, Darris Allen, for a routine traffic violation about 60 to 70 miles away from the bank.  (*Id.* ¶¶ 51, 52.)  During a search of the vehicle,

---

[1] The Court dismissed with prejudice Plaintiff's eighth claim for violations of the Unruh Civil Rights Act and Bane Act and his tenth claim for false imprisonment.  (*See* Dkt. 44.)

the deputies found a black plastic bag wedged between the driver's seat and center console that contained over $3,000 in currency stained with red dye.  (*Id.* ¶ 58.)  One of the deputies also found $201 in Plaintiff's pants pocket that had red dye and allegedly smelled of bleach.  (*Id.* ¶¶ 17, 76.)

Several days after the robbery, Defendants Brown, Murren, and Young searched Plaintiff's car while it was in police custody at a tow yard.  (*Id.* ¶¶ 98, 104–05.)  Their search purportedly uncovered a bag of coins stained with red dye and smelling of pepper spray, and a tank top and towel with red stains.  (*Id.* ¶¶ 127–29.)  The bag of coins, tank top, and towel were not documented or observed by the Sheriff's Department deputies who originally arrested Plaintiff.

A jury convicted Plaintiff of five counts of second degree robbery on March 27, 2007.  According to Plaintiff, his conviction was premised largely on false testimony and evidence.  On direct appeal, a California appellate court affirmed his conviction but struck certain sentence enhancements.  (*Id.* ¶ 166.)

**B.    Post-Conviction Proceedings**

Years later on October 14, 2011, Plaintiff filed a habeas petition challenging his conviction.  (*Id.* ¶ 170.)  He asserted *Brady* violations based on the Sherriff's Department's alleged suppression of a Federal Bureau of Investigation ("FBI") report that contained a statement from one of the witnesses, bank teller Claudia Rissling.  Rissling purportedly told the FBI that one robber had a "medium" complexion, even though she testified at trial that Plaintiff looked similar to that same robber because Plaintiff has a "dark" complexion.  (*See* FAC Ex. 4 at 422.)  Plaintiff also claimed that his attorney failed to obtain certain cell phone records that would have shown he was in a

1    different location during the robbery.  (*See id*.)  Over the next three years, the state court

2    conducted several evidentiary hearings.  (Dkt. 85-1 Ex. 1 at 15–16.)

3

4        Judge Koppel of the Los Angeles County Superior Court denied Plaintiff's 2011

5    habeas petition in a tentative ruling.  (Dkt. 84-18 Ex. P at 3.)  She did not individually

6    address the issues Plaintiff raised.  She stated only that the "evidence was sufficient for

7    the jury to come to the decision they came to" and that further proceedings were not

8    warranted.  (Dkt. 84-3 Ex. C at 5.)  She explained that her denial was based on a review

9    of the documents and the evidence adduced at trial.  (*Id*.)  On June 12, 2015, she declared

10   her tentative ruling the court's final decision.  (Dkt. 84-17 Ex. O at 2.)

11

12       In late 2016, Plaintiff filed a supplemental habeas petition in the state appellate

13   court.  This supplemental petition argued that (1) post-conviction forensic testing

14   confirmed that the tank top and towel did not contain bank dye, (2) defense counsel's

15   failure to test either item for bank dye constituted ineffective assistance of counsel,

16   (3) false evidence of bank dye and pepper spray on the items were presented to the jury,

17   and (4) that the cumulative effect of this evidence and ineffective assistance of counsel

18   denied him a right to a fair trial.  (*See* Dkt. 85-1 Ex. 1 at 24.)  He also contended that

19   Judge Koppel applied the incorrect standard of review in denying his 2011 writ.

20

21       The appellate court granted Plaintiff's supplemental habeas petition in late 2017

22   and overturned his conviction.  (Dkt. 85-1 Ex. 1.)  The court undertook an independent

23   review of the record and made its own factual determinations.  (*Id*. at 27.)  First, it found

24   that Plaintiff received ineffective assistance of counsel "when trial counsel inexplicably

25   neglected to test the shirt and towel."  (*Id*. at 25.)  Next, it considered whether this error

26   was harmless.  The court noted that without the tank top and towel, "the only item found

27   on [Plaintiff] that tied him to the robbery was the $200 in cash."  (*Id*. at 34.)  Because

28   there was no other direct evidence linking him to the crime, the court determined that

even under "[Judge Koppel's] incorrect sufficiency of the evidence standard of review, the case against [Plaintiff] is simply not strong enough to uphold." (*Id.* at 36.) The court instructed the State to either release Plaintiff from custody or retry him. (*Id.* at 38.) The State initially elected to retry Plaintiff and filed an Amended Information on March 16, 2018. (FAC ¶ 179.) It ultimately dismissed the action on June 4, 2018, before proceeding to trial. (*See id.* ¶ 255.)

### C.    Current Proceeding

Plaintiff filed the instant action on August 31, 2018. He asserted eleven claims. On January 16, 2019, the Court granted in substantial part Defendants' motion to dismiss, dismissing claims three through eleven. (Dkt. 34.) Plaintiff then filed the operative First Amended Complaint asserting the same eleven claims. (*See* FAC.) Defendants again moved to dismiss. On March 5, 2019, the Court granted the motion in part. (Dkt. 44.) It dismissed with prejudice Plaintiff's eighth and tenth claims for false imprisonment and violations of the Unruh Civil Rights Act and Bane Act. It also dismissed with prejudice parts of Plaintiff's fifth and sixth claims for *Brady* violations. Defendants now move for judgment on the pleadings as to Plaintiff's remaining nine claims. (Dkt. 84 [hereinafter "Mot."].)

### III.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion asserting failure to state a claim is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Accordingly, the district court may consider additional facts in materials of which the district court may take judicial notice, *Barron v.*

*Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Judgment on the pleadings is appropriate when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

## IV.  ANALYSIS

Defendants first move for judgment on the pleadings on the ground that Plaintiff's claims are barred by collateral estoppel. They argue that issues in Plaintiff's "core" claims for fabrication of evidence and violation of *Brady* were raised and decided in his 2007 criminal trial and in Judge Koppel's denial of his 2011 habeas petition. Because Plaintiff's other claims are derivative of these claims, Defendants argue that Plaintiff is precluded from litigating them here. Alternatively, Defendants move for judgment on the pleadings on the basis that Plaintiff fails to state a plausible claim for relief.

### A.    Evidentiary Objections

In their moving papers, both parties rely on filings from Plaintiff's trial and post-conviction proceedings. These documents include Plaintiff's 2011 habeas petition, court orders deciding that petition, and transcripts from his 2006 preliminary hearing, 2007 trial, and 2011 habeas proceedings. (*See* Dkt. 84-1 [Defs.' Request for Judicial Notice, hereinafter "RJN"], Dkt. 85 [Pl.'s Opp'n to Defs.' Mot., hereinafter "Opp'n"] Exs. 1–8.) Defendants argue that the Court may consider these documents both because they are incorporated-by-reference in the First Amended Complaint and are subject to judicial

1    notice.  (*See* RJN.)  Plaintiff opposes in part Defendants' reliance on these documents.

2    (Dkt. 86 [Pl.'s Objections to RJN].)  He argues that Defendants are using the filings from

3    his prior proceedings to introduce "disputed material and/or ultimate facts."  (*Id.* at 2.)

4    He also argues that consideration of such evidence requires the Court to convert

5    Defendants' motion for judgment on the pleadings into a motion for summary judgment.

6    (*Id.*)

7

8    The Court can consider "documents attached to the complaint, documents

9    incorporated by reference in the complaint, or matters of judicial notice" without

10   converting the motion into a motion for summary judgment.  *United States v. Ritchie*, 342

11   F.3d 903, 908 (9th Cir. 2003).  A document is "incorporated by reference into a

12   complaint if the plaintiff refers extensively to the document or the document forms the

13   basis of the plaintiff's claim."  *Id.* at 908.  A fact is subject to judicial notice where it is

14   "not subject to reasonable dispute" or is "capable of accurate and ready determination by

15   reference to sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid.

16   201(b).  It is well established that courts may take notice of court filings and other

17   matters of public record.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741,

18   746 n.6 (9th Cir. 2006).  However, the Court cannot take notice of disputed facts in a

19   filing simply because the filing itself is a matter of public record.  *Lauter v. Anoufrieva*,

20   642 F. Supp. 2d 1060, 1077 (C.D. Cal. 2009).

21

22   The Court may consider the filings from Plaintiff's prior proceedings, whether

23   because they are attached to his First Amended Complaint or incorporated by reference.

24   Several of these filings are among the thirty documents attached to Plaintiff's First

25   Amended Complaint.  (*See, e.g.*, FAC Exs. 3 [transcript from 2006 preliminary hearing],

26   18 [appellate court's decision reversing conviction], 19 [transcript from 2011 habeas

27   proceedings].)  The First Amended Complaint repeatedly cites excerpts from these

28   documents.  (*See* RJN at 6 n.1 [citing examples].)

1      Certain facts within the filings are also subject to judicial notice.  Plaintiff is

2  correct that the Court cannot take judicial notice of disputed facts.  However, Defendants

3  do not seek notice of disputed facts.  Defendants' request pertains to the arguments and

4  issues raised in Plaintiff's trial and habeas proceedings.  (*See generally* RJN.)  Whether

5  Plaintiff or his counsel made a certain argument or raised a specific issue is not disputed.

6  *See United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004)

7  ("[D]ocuments are judicially noticeable only for the purpose of determining what

8  statements are contained therein, not to prove the truth of the contents or any party's

9  assertion of what the contents mean").  Accordingly, the Court takes notice of the issues

10  raised in Plaintiff's prior proceedings for the purpose of determining whether he is

11  collaterally estopped from relitigating them here.

12

13      **B.**    **Collateral Estoppel**

14

15      The doctrine of collateral estoppel or issue preclusion "preclude[s] relitigation of

16  [an] issue in a suit on a different cause of action involving a party to the first case."

17  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  In determining whether a party is collaterally

18  estopped from litigating an issue, courts look to the law of the forum that rendered the

19  first judgment.  *Furnace v. Giurbino*, 838 F.3d 1019, 1022 (9th Cir. 2016); *see* 28 U.S.C.

20  § 1738.  In California, issue preclusion applies "(1) after final adjudication (2) of an

21  identical issue (3) actually litigated and necessarily decided in the first suit and

22  (4) asserted against one who was a party in the first suit or one in privity with that party."

23  *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 815 (2015).  "[A]ny issue necessarily

24  decided in a prior criminal proceeding is conclusively determined as to the parties if it is

25  involved in a subsequent civil action."  *Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 58

26  Cal. 2d 601, 607 (1962); *see also Younan v. Caruso*, 51 Cal. App. 4th 401, 412 (1996)

27  ("Factual determinations made in state court habeas corpus proceedings are also given

28  collateral estoppel effect in federal civil rights actions.").

If the threshold requirements of collateral estoppel are satisfied, courts look to the public policies underlying the doctrine before deciding whether it should apply in a particular case. *Y.K.A. Indus., Inc. v. Redevelopment Agency of City of San Jose*, 174 Cal. App. 4th 339, 357 (2009). Application of the collateral estoppel doctrine serves: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." *People v. Vogel*, 148 Cal. App. 4th 131, 136 (2007).

### 1.    2011 Habeas Petition

Defendants first contend that Judge Koppel's denial of Plaintiff's 2011 habeas petition bars Plaintiff's fifth and sixth claims for violations of *Brady v. Maryland*, 373 U.S. 83 (1963). Plaintiff alleges Defendants violated *Brady* by (1) failing to disclose Rissling's FBI witness statement and (2) suppressing footprint evidence from the crime scene. (*See* Dkt. 44 at 10–12 [dismissing with prejudice Plaintiff's other bases for his *Brady* claims].) Defendants argue that Judge Koppel specifically addressed and ruled on both of these issues when denying Plaintiff's 2011 habeas petition.

Plaintiff does not dispute that his counsel raised and litigated these issues before Judge Koppel. (*See generally* Opp'n.) In his 2011 habeas petition, Plaintiff asserted *Brady* violations based on the allegation that the "Sheriff's Department intentionally withheld and continue[d] to withhold" (1) the "F.B.I. FD-302 report of inconsistent victim-witness statements," and (2) "footprint evidence, photographs and a Los Angeles County Sheriff's Department Crime Lab Report pertinent to the finding's [sic] of the withheld footprint evidence." (Dkt. 84-3 Ex. A [Habeas Petition] at 02981, 03010.) During the ensuing evidentiary hearings, the court heard evidence and testimony on these issues. Plaintiff testified that he did not receive the FBI report and argued it was

1   exculpatory because Rissling "told the FBI the person she described as me had a medium

2   complexion, which is huge because I'm dark." (Dkt. 84-3 Ex. K [Transcript 10/18/2012]

3   at 18:9–22:3.) He also testified that footprint evidence was not disclosed, which again

4   was "huge because . . . my shoes are [Carmelo] Anthony basketball shoes and not shoes

5   the robbers wore." (*Id*. at 22:4–24:27.)

6

7        At issue is whether Judge Koppel's denial of Plaintiff's 2011 habeas petition

8   constituted a "final adjudication" of those issues. For purposes of issue preclusion, a

9   final adjudication "includes any prior adjudication of an issue in another action that is

10  determined to be sufficiently firm to be accorded conclusive effect." *Border Bus. Park,*

11  *Inc. v. City of San Diego*, 142 Cal. App. 4th 1538, 1564 (2006) (citing *Sandoval v.*

12  *Superior Court*, 140 Cal. App. 3d 932, 936 (1983)). To determine whether an action is

13  "sufficiently firm," the Court considers: "(1) whether the decision was not avowedly

14  tentative; (2) whether the parties were fully heard; (3) whether the court supported its

15  decision with a reasoned opinion; and (4) whether the decision was subject to an appeal."

16  *Border Bus. Park*, 142 Cal. App. 4th at 1565 (citing *Sandoval*, 140 Cal. App. 3d at 936).

17

18       Defendants have not met their burden of showing that Judge Koppel's decision

19  was a "sufficiently firm" final adjudication of the alleged Brady violations. Judge

20  Koppel did not support her decision with any "reasoned opinion." From the bench, she

21  made the following tentative ruling:

22

23       The court has reviewed the documentation before it. The court heard the entire
         trial. And it appears to the court that the evidence was sufficient for the jury to
24       come to the decision they came to, and that there is not sufficient evidence at this
         time to go any further with it. And therefore, the habeas—petition for habeas is
25       denied.

26

27  (Dkt. 84-3 Ex. C [Transcript 5/28/2015] at 5:26–6:5; *see also* Dkt. 84-3 Ex. B [Minute

28  Order] at 1 ["The evidence was sufficient for the jury to make a finding based upon the

1   entire set of circumstances; therefore, the petition for habeas corpus is tentatively

2   denied."].)  Judge Koppel later declared that tentative ruling her final opinion, without

3   providing any further detail or justification.  (*See* Dkt. 84-17 Ex. O [Transcript

4   6/12/2015] at 2:14 ["The writ is denied. Thank you."].)  The record before the Court

5   contains no indication of the basis for her decision on the individual *Brady* violations

6   alleged.  She simply weighed all the evidence to determine whether it was sufficient for

7   the jury to reach its verdict.

8

9   The state appellate court's 2017 decision called into question some of the evidence

10  adduced at Plaintiff's trial, evidence that may have influenced Judge Koppel's denial.  It

11  held that the failure to test the tank top and towel constituted ineffective assistance of

12  counsel because neither item contained bank dye.  It also noted that Defendant Brown's

13  "pantomime" testimony regarding the purported smell of pepper spray on those items was

14  prejudicial.  And it found that without this evidence, the only item found on Plaintiff's

15  person that linked him to the robbery was the $200 in cash.  The court held that even

16  under "[Judge Koppel's] incorrect sufficiency of the evidence standard of review, the

17  case against [Plaintiff] is simply not strong enough to uphold."  (Dkt. 85-1 Ex. 1 at 36.)

18  In light of this ruling, the Court does not find Judge Koppel's decision was sufficiently

19  final as to whether the prosecution violated *Brady*.

20

21              **2.      2007 Jury Verdict**

22

23  Defendants next contend that the jury's 2007 verdict bars Plaintiff's first claim for

24  fabrication of evidence.  Plaintiff asserts that Defendants fabricated evidence by

25  (1) planting a plastic bag containing a stocking with dye-stained coins in Plaintiff's car

26  and (2) photographing that evidence when searching his car.  Defendants contend that

27  Plaintiff raised and argued this "plant theory" during his 2007 trial.  (*See, e.g.*, Dkt. 84-9

28  Ex. G at 803:11–804:10; Dkt. 84-12 Ex. J at 1674:12–1676:4, 1683:7–13.)  They argue

1    that because the jury ultimately convicted Plaintiff, it "necessarily found against"

2    Plaintiff on his plant theory.

3

4    Defendants have failed to meet their burden of showing that the jury's 2007 verdict

5    necessarily decided the issue of whether Defendants fabricated evidence.  The jury's

6    decision to convict Plaintiff for second-degree robbery is not mutually exclusive with a

7    finding that Defendants fabricated one piece of evidence.  As the Court outlines above,

8    Plaintiff's trial included other evidence linking him to the robbery.  The jury could have

9    determined that the other evidence at trial was sufficient, even without considering the

10   bag of dye-stained coins.

11

12   **C.      Failure to State a Claim**

13

14   Defendants alternatively argue that Plaintiff's *Brady* and fabrication claims fail to

15   state a plausible claim for relief.  To state a claim under *Brady*, a plaintiff must allege that

16   "(1) the withheld evidence was favorable either because it was exculpatory or could be

17   used to impeach, (2) the evidence was suppressed by the government, and (3) the

18   nondisclosure prejudiced the plaintiff."  *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir.

19   2011).  In its March 5, 2019 Order, the Court denied in part Defendants' motion to

20   dismiss Plaintiff's *Brady* claims.  (Dkt. 44.)  To the extent they were based on the

21   purported suppression of Rissling's FBI statement and shoe print evidence, the Court

22   found that Plaintiff had alleged sufficient facts to state a plausible claim.  (*Id*. at 10–12.)

23

24   Defendants argue that testimony and evidence from Plaintiff's trial and post-

25   conviction proceedings foreclose the remaining bases for his *Brady* claims.  However, the

26   testimony on which Defendants rely concerns whether shoe print evidence was

27   introduced in Plaintiff's post-conviction proceedings, not whether it was disclosed to

28   Plaintiff's counsel *before* his trial.  (*See* Mot. at 19.)  Further, while the Court may

1   consider statements contained in judicially-noticed filings, it cannot consider disputed

2   facts.  Defendants, in part, ask the Court to accept as true the testimony in those filings to

3   effectively eliminate the dispute at hand.  (*See id*. at 20 [pointing to one officer's

4   testimony that he did not receive any report from the FBI].)  But the whole premise of

5   Plaintiff's action is that Defendants lied.  For the reasons stated in the Court's prior

6   Order, (Dkt. 44), Plaintiff has plausibly alleged that the suppression of the shoe print

7   evidence and FBI witness statement, if true, would have prejudiced him.

8

9        Defendants also argue that Plaintiff has failed to state a plausible claim for

10  fabrication of evidence.  To bring this claim, a plaintiff must show "(1) the defendant

11  official deliberately fabricated evidence and (2) the deliberate fabrication caused the

12  plaintiff's deprivation of liberty."  *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017)

13  (citations omitted).  In its January 16, 2019 Order, the Court denied Defendants' motion

14  to dismiss this claim.  (Dkt. 34.)  It found that Plaintiff had alleged sufficient facts to

15  suggest that the evidence Defendants purportedly seized was fabricated.  (*Id*. at 10–11.)

16  Defendants seem to argue that Plaintiff's claim is now "implausible" because Plaintiff

17  cannot explain precisely how Defendants could have planted a bag of coins in his car.

18  That is not Plaintiff's burden at this stage, when discovery has just begun.  For the

19  reasons stated in the Court's prior Order, Plaintiff has plausibly alleged that Defendants

20  fabricated evidence that led to his 2007 conviction.

21

22

23

24

25

26

27  //

28  //

-13-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.  CONCLUSION**

For the foregoing reasons, Defendants' motion for judgment on the pleadings is **DENIED**.

DATED:      August 2, 2019

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE